STATE OF NORTH CAROLINA v. SEQUOYAH E. TRUEBLOOD

No. 7912SC1170

(Filed 6 May 1980)

**Criminal Law § 84; Searches and Seizures § 3— civilian trial of Army officer — seized evidence — participation by military authorities — Posse Comitatus Act**

A violation of the Posse Comitatus Act, 18 U.S.C. § 1385, does not require the exclusion of evidence thereby obtained from a civilian criminal trial. Furthermore, there was no violation of the Posse Comitatus Act where such part as an Army Criminal Investigation Division agent and other Army personnel played in connection with a civilian investigation of the illegal drug activities of defendant, an officer in the U. S. Army, was at all times passive, and there was no use of "any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws" as prohibited by the Act.

APPEAL by defendant from *Brown, Judge.* Judgments entered 2 August 1979 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 23 April 1980.

By indictments proper in form defendant was charged with possession with intent to sell and deliver, sale and delivery, and conspiracy to sell and deliver cocaine, all in violation of North Carolina statutes. Prior to trial defendant moved for an order

. . . suppressing any and all evidence obtained by the State of North Carolina as a result of the investigative activity, both direct and indirect, of representatives of the United States Army Criminal Investigation Division on the ground that said investigative activity and the evidence seized as a result thereof was illegal and expressly prohibited by law and the provisions of Title 18, United States Code, Section 1385, more commonly referred to as the "Posse Comitatus Act".

Specifically, Defendant moves to suppress all purported controlled substances and serialized currency at any time during the course and scope of the criminal investigation of the Defendant where such investigative activity included participation of representatives of the United States Army Criminal Investigation Division.

This motion was heard prior to defendant's trial by Judge E. Maurice Braswell, who denied the motion. At trial before Judge

Frank R. Brown and a jury, the jury returned verdicts finding defendant guilty on all charges. He appeals from judgments imposed on the verdicts, his sole assignment of error being directed to the denial of his pretrial motion to suppress.

*Attorney General Edmisten by Associate Attorney General Kucharski for the State.*

*Coolidge, Clarke, Hutchens & Waple by Mark L. Waple, and Barfield and Canders by K. Douglas Barfield for defendant appellant.*

PARKER, Judge.

Defendant's sole contention is that the court erred in denying his pretrial motion to suppress evidence which he contends was obtained as a result of violations of 18 U.S.C. § 1385, known as the Posse Comitatus Act. "A short answer to this contention is that a violation of the Act would not call for invocation of the exclusionary rule." *State v. Nelson,* 298 N.C. 573, 585, 260 S.E. 2d 629, 639 (1979). Thus, even if a violation of the Act had occurred in this case, there would have been no error in the court's denial of defendant's motion to suppress. We find, in any event, that no violation of the Posse Comitatus Act occurred in this case.

The Posse Comitatus Act reads as follows:

18 U.S.C. § 1385. USE OF ARMY AND AIR FORCE AS POSSE COMITATUS

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

Discussing this Act, our Supreme Court said:

The legislative purpose of the Posse Comitatus Act is to preclude the direct active use of federal troops in aid of execution of civilian laws. *Gillars v. United States,* 182 F. 2d 962 (D.C. Cir. 1950); *United States v. Red Feather,* 392 F. Supp. 916 (D.S.D. 1975). Passive activities of military authorities which incidentally aid civilian law enforcement

are not precluded. *United States v. Red Feather, supra.*
"[T]he statute is limited to deliberate use of armed force for
the primary purpose of executing civilian laws more effec-
tively than possible through civilian law enforcement chan-
nels, and . . . those situations where an act performed
primarily for the purpose of insuring the accomplishment of
the mission of the armed forces incidentally enhances the en-
forcement of civilian law do not violate the statute." Furman,
Restrictions Upon Use of the Army Imposed by the Posse
Comitatus Act, 7 Mil. L. Rev. 85, 128 (1960).

*State v. Nelson, supra* at 585, 260 S.E. 2d at 639.

In this case Judge Braswell, after hearing evidence presented
on defendant's motion to suppress, entered an order making find-
ings of fact, to which no exception has been taken, which may be
summarized as follows:

In January 1979 S.B.I. Agent Wolak talked with an agent of
the Criminal Investigation Division of the U.S. Army at Fort
Bragg concerning any army officer whose name was thought to be
Truelove or Trueblood and who was thought to be involved in il-
licit drugs both on and off the base. At that time defendant was a
Major in the army stationed at Fort Bragg. The C.I.D. Agent with
whom Wolak talked sought advice from the Staff Judge Advocate
at Fort Bragg concerning the Posse Comitatus Act. He was ad-
vised he could go with the S.B.I. Agent off post but could only
observe the civilian investigation, and that if the agents came on
post, the C.I.D. Agent should then assume charge of the investiga-
tion. S.B.I. Agent Wolak did conduct surveillances of defendant in
January, February, and early March 1979. During these surveil-
lances the C.I.D. Agent rode as a passenger in the Wolak vehicle.
He was not in uniform, had no weapon, took no pictures, con-
ducted no interviews, took no statements, and did not coordinate
what was happening off post with anyone at Fort Bragg. On
perhaps two occasions he did go get food for both agents to eat,
he did listen to debriefing of an undercover agent and later made
notes for his own command, and he did furnish Wolak background
information on defendant, such as his name, number, and unit.
The Staff Judge Advocate furnished access to a photograph of
defendant.

On 26 January 1979 an undercover agent with the S.B.I. had a transaction with defendant on the Fort Bragg reservation in which he paid defendant $3000.00 from State funds for cocaine to be delivered on 29 January. On 29 January this agent paid defendant $1200.00 for marijuana which defendant had delivered to him on 26 January. This $1200.00 for marijuana was furnished by the C.I.D. from Army funds.

Defendant was arrested on 6 March 1979 at Spring Lake, N.C. by S.B.I. Agent Wolak. Immediately after the arrest he was taken to the residence of one Im Suk Dawson, a friend of the defendant, at Spring Lake, where a search warrant was executed. The C.I.D. Agent went to the Dawson residence, identified himself to the defendant, but did not participate in the search and did not then have defendant in his custody. After the civilian authorities took defendant to the Cumberland County Law Enforcement Center, the C.I.D. Agent did take defendant to defendant's room in the B.O.Q. at Fort Bragg to obtain his personal clothing. Once there, the C.I.D. Agent asked for and obtained defendant's consent to search his room.

These factual findings fully support Judge Braswell's conclusion that there was no violation of the Posse Comitatus Act in this case. The defendant, an officer in the Unted States Army, was subject to military discipline and control. His illicit drug dealings were of direct concern to the agents of the Army Criminal Investigation Division in performing their own duties. Such part as the C.I.D. Agent or other army personnel played in connection with the civilian investigation into defendant's violations of State laws was at all times passive. There was here no use of "any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws" in violation of 18 U.S.C. § 1385

In defendant's trial and in the judgments entered against him we find

No error.

Chief Judge MORRIS and Judge WELLS concur.