STATE OF NORTH CAROLINA v. EDDIE BEN HAYES

No. 9012SC690

(Filed 7 May 1991)

### 1. Criminal Law § 84 (NCI3d)— cocaine—Posse Comitatus Act— dismissal denied

The trial court did not err by failing to dismiss charges of conspiracy to traffic and trafficking in cocaine based on violations of the Posse Comitatus Act where the Fort Bragg Criminal Investigation Unit investigated an AWOL soldier for drugs; a CID agent met with the soldier to set up a drug purchase; the soldier told him he could acquire cocaine from a person he knew from the military; and CID and City-County Bureau of Narcotics investigators coordinated a drug purchase, after which defendant was arrested. There was no violation of the Posse Comitatus Act because the investigation began with the involvement of an AWOL soldier, and it has been held that investigations into the illicit drug dealings of military personnel are of direct concern to Army CID in performing their duties. Also, this is a case of the military calling the civilian agency, rather than the civilian agency asking for military assistance.

**Am Jur 2d, Drugs, Narcotics, and Poisons § 44.**

### 2. Criminal Law § 1133 (NCI4th)— cocaine—sentencing— aggravating factor—position of leadership

The trial court did not err when sentencing defendant for trafficking in cocaine by finding as an aggravating factor that defendant had occupied a position of leadership in the commission of the offense where there was testimony that an undercover agent complained about the amount of drugs he was receiving, defendant looked at one of the participants and nodded toward the door, and that man left and returned with another half-ounce of cocaine. Leadership over one of the participants in an offense is sufficient to support this aggravating factor.

**Am Jur 2d, Drugs, Narcotics, and Poisons § 48.**

APPEAL by defendant from judgment entered 28 February 1990 in CUMBERLAND County Superior Court by *Judge Henry V. Barnette, Jr.* Heard in the Court of Appeals 18 March 1991.

Defendant was charged with conspiracy to traffic in a controlled substance, trafficking by possession of at least 28 grams but less than 200 grams of cocaine, trafficking by sale of at least 28 grams but less than 200 grams of cocaine, and trafficking by delivery of at least 28 grams but less than 200 grams of cocaine.

At trial, the State's evidence tended to show that the Fort Bragg United States Army Criminal Investigation Detachment (CID) was investigating John Lucio, an AWOL soldier, for involvement with drugs. Stephen Maxwell, a CID agent, met with Lucio on 21 August 1989 to attempt to set up a drug purchase. Lucio told him that he could acquire cocaine from a person he knew from the military. Two days later, Maxwell and other CID investigators met with several members of the City-County Bureau of Narcotics Office (CCBN) to coordinate a drug purchase. Maxwell was fitted with a wire, and surveillance teams consisting of CCBN and CID personnel were set up. Maxwell and a CCBN officer then went to meet Lucio.

Lucio drove with Maxwell and the agent to an apartment where they met with a woman who told them they would be doing business with her rather than defendant Hayes. This was the first time defendant's name had been mentioned to Maxwell. Defendant then entered the apartment. They went into the living room area and defendant told them to sit down. Defendant then informed Maxwell that he was in the military. A man came in and went into the kitchen with the drugs. Lucio and Maxwell were then summoned to come into the kitchen. The cocaine was in seven individual bags. Maxwell discovered that it was one half-ounce short. The woman then called for Hayes. Defendant looked at the man who had last entered and nodded toward the door. The man left and returned with another half-ounce. Maxwell paid with money from CID, and the cocaine was bagged up and carried out by Lucio. Shortly thereafter, CCBN officers arrested Lucio and simulated an arrest of Maxwell and the other officer. A CCBN officer took custody of the drugs. A CCBN officer with CID officers then secured the apartment where the other participants in the transaction were located, including defendant. Maxwell was brought back to identify the participants, who were arrested.

STATE v. HAYES

[102 N.C. App. 777 (1991)]

Defendant moved to dismiss at the close of the State's evidence based on a violation of the Posse Comitatus Act, which was denied. Defendant then put on evidence tending to show that he knew the transaction was going to take place in the apartment on that day but did not participate in it in any way. The motion to dismiss was renewed and denied at the close of the defendant's evidence. The jury returned a verdict of guilty on all counts. The offenses were consolidated and defendant was sentenced to ten years in prison. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General E. Burke Haywood, for the State.*

*Tally & Tally, by John C. Tally, for defendant-appellant.*

WELLS, Judge.

[1] Defendant brings forward two assignments of error contending that the trial court erred in failing to dismiss the charges against defendant based on alleged violations of the Posse Comitatus Act (18 U.S.C. § 1385) and in finding as an aggravating factor that the defendant occupied a position of leadership concerning the other participants in the commission of the offense. We find no error.

18 U.S.C. § 1385 provides:

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

The statute, originally enacted during Reconstruction, has become the subject of increasing litigation in recent years. *See U.S. v. Thompson,* 30 M.J. 570 (1990), *review granted in part,* 32 M.J. 5 (1991). It is clarified in part by 10 U.S.C. § 371 *et seq.,* and the regulations codified in 32 C.F.R. § 213. *Id.* 32 C.F.R. § 213.10(a)(3) defines the phrase "as a posse comitatus or otherwise to execute the laws" to include (i) interdiction of a vehicle, vessel, aircraft or other similar activity, (ii) a search or seizure, (iii) an arrest, stop and frisk, or similar activity, and (iv) use of military personnel for surveillance or pursuit of individuals, or as informants, undercover agents, investigators, or interrogators.

This list of actions lends support to defendant's contention that we must look to whether the military assistance complained of is best defined as active or passive. The results of such an inquiry do not, however, settle the issue of whether the Posse Comitatus Act has been violated. The intent and purpose for which the military became involved is of crucial import. C.F.R. § 213.10(a)(2) provides that certain activities involving direct assistance to civilian law enforcement do not violate the Posse Comitatus Act. Section 213.10(a)(2)(i) includes among those actions:

> Actions that are taken for the primary purpose of furthering a military or foreign affairs function of the United States, regardless of incidental benefits to civilian authorities. This provision must be used with caution, and does not include actions taken for the primary purpose of aiding civilian law enforcement officials or otherwise serving as a subterfuge to avoid the restrictions of the Posse Comitatus Act. Actions under this provision may include the following, depending on the nature of the DoD interest and the specific action in question:

> (A) Actions related to enforcement of the Uniform Code of Military Justice (10 U.S.C. Chapter 47).

> . . .

> (F) Such other actions that are undertaken primarily for a military or foreign affairs purpose.

These regulations are consistent with case law interpretations of the Act, including that of our own Supreme Court. *See State v. Nelson*, 298 N.C. 573, 260 S.E.2d 629 (1979), *cert. denied*, 446 U.S. 929, 64 L.Ed.2d 282 (1980). After considering the level of military involvement in this operation and its purpose, we hold that no violation of the Posse Comitatus Act occurred in this case. Maxwell began an investigation of Lucio, an AWOL soldier, for involvement with drugs. Lucio told Maxwell that he could acquire cocaine from someone he knew in the military. Possession and distribution of cocaine are violations of the Uniform Code of Military Justice. U.C.M.J. Article 112a. This Court has previously noted that investigations into the illicit drug dealings of military personnel are of direct concern to the Army CID in performing their duties. *State v. Trueblood*, 46 N.C. App. 541, 265 S.E.2d 662 (1980). The investigation and CID involvement in the drug transaction did not "pervade the activities of civilian officials, and did not subject the

citizenry to the regulatory exercise of military power." *U.S. v. Bacon*, 851 F.2d 1312 (11th Cir. 1988).

We also note that this case does not involve a civilian agency asking for military assistance. The military called the civilian agency to handle those matters which only it could. "The fact that the Navy's (in this case Army's) internal investigation happened to uncover wrongs by civilians does not bring the case within the scope of 18 U.S.C. § 1385 or render the Navy (in this case Army) agents incompetent as witnesses." *State v. Maxwell*, 328 S.E.2d 506 (W.Va. 1985).

Defendant's argument is based primarily on the contention that evidence acquired as a result of a violation of the law should be excluded at trial. In *Taylor v. State*, 645 P.2d 522 (Okl. Cr. 1982), the court refused to extend a *per se* exclusionary rule to cases involving violation of the Act but held that remedies should be determined on a case by case basis. In *U.S. v. Walden*, 490 F.2d 372 (4th Cir. 1974), *cert. denied*, 416 U.S. 983, 40 L.Ed.2d 760, *rehearing denied*, 417 U.S. 977, 41 L.Ed.2d 1148 (1974), the court held that it would not fashion an exclusionary rule absent more evidence of a need to deter violations. We note that while our appellate courts have stated that a violation of the Act does not call for invocation of the exclusionary rule, these statements appear to be *dicta. See State v. Sanders*, 303 N.C. 608, 281 S.E.2d 7, *cert. denied*, 454 U.S. 973, 70 L.Ed.2d 392 (1981), *Nelson, supra; Trueblood, supra.* Since we have found no violation of the Act, we need not determine the exclusion question.

[2] Defendant next assigns error to the trial court's finding as an aggravating factor that he occupied a position of leadership concerning the other participants in the commission of the offense. In order to be valid, an aggravating factor must be supported by sufficient evidence to allow a reasonable judge to find its existence by a preponderance of the evidence. *State v. Baynard*, 79 N.C. App. 559, 339 S.E.2d 810 (1986). The trial court should be permitted wide latitude, however, in arriving at the truth as to the existence of aggravating and mitigating factors, for it alone observes the demeanor of the witnesses and hears the testimony. *State v. Ahearn*, 307 N.C. 584, 300 S.E.2d 689 (1983).

In this case, Maxwell testified that after he complained about the amount of drugs he was receiving, defendant looked at one of the participants and nodded toward the door. The man (Jerry

Hollingsworth) left and returned shortly thereafter with another half-ounce of cocaine. There was testimony from defendant and others attempting to refute this and indicating various levels of involvement by defendant in the transaction. Hollingsworth himself, however, testified that when the dispute over the amount was occurring, defendant entered the kitchen and "motioned" him to go and get another half-ounce of cocaine. Evidence tending to show that a defendant occupied a position of leadership over *one* of the participants in the offense is sufficient to support this aggravating factor, regardless of whether the evidence also shows that others exercised leadership or control in the commission of an offense. *State v. Jones*, 309 N.C. 214, 306 S.E.2d 451 (1983). The evidence in this case was sufficient to support the finding that defendant occupied a position of leadership. This assignment of error is overruled.

No error.

Chief Judge HEDRICK and Judge EAGLES concur.