**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Sheila Ann TYLER, Defendant–Appellant.**

**No. 90CA1944.**

Colorado Court of Appeals, Div. IV.

Feb. 11, 1993.

Rehearing Denied March 11, 1993.

Certiorari Granted July 12, 1993.

 

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Koehler, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Lindy Frolich, State Public Defender, Denver, for defendant-appellant.

Opinion by Judge JONES.

Defendant, Sheila Ann Tyler, appeals from a judgment of conviction entered upon jury verdicts finding her guilty of two counts related to possession and distribution of cocaine. We reverse.

Defendant was charged with distribution and sale of a controlled substance and with possession of a controlled substance based on a sale of crack cocaine she allegedly made in her home to a paid informant and to a member of the United States Army Criminal Investigation Command at Fort Carson. Defendant's home is not located on the army base, but on subsequent occasions, the military investigator encountered the defendant at various locations at Fort Carson.

During the trial to a jury, the defendant presented an alibi defense that she had been bicycling with two friends on the day and at the time she was accused of having sold the crack cocaine from her home. The two friends testified in support of her alibi. Nevertheless, she was convicted of both counts charged. This appeal followed.

### I.

Defendant first contends that the trial court erred in denying her motion to suppress evidence seized from her by the military police. She argues that the agent of the United States Army Criminal Investigation Division (CID) acted in violation of the Posse Comitatus Act (PCA), 18 U.S.C. § 1385 (1992). We agree.

### A.

■ The trial court initially determined that the motion was not timely filed but, nevertheless, went on to consider the motion on its merits. The People argue that such untimeliness should form a basis for us to affirm the trial court ruling. We disagree.

Motions to suppress should be filed and heard before trial unless the opportunity for hearing did not exist or the defendant was unaware of the grounds for the motion. Crim.P. 41(e). And, the practice, as employed here, of hearing such motions after a jury has been impaneled and sworn has been disapproved. *Barela v. People*, 826 P.2d 1249 (Colo.1992).

■ Nevertheless, Crim.P. 41(e) provides that the court, in its discretion, may allow the filing of such motions, and hear them,

during the trial. When the court entertains such a motion at trial, the issue of timeliness of the motion becomes moot and is no longer a ground for denial of the motion. *People v. Robertson*, 40 Colo.App. 386, 577 P.2d 314 (1978).

We conclude that such was the case here, and that the trial court did not abuse its discretion in hearing the motion at trial. Thus, we will address the substance of defendant's contention.

### B.

The PCA was originally passed during reconstruction. It was designed to limit the direct use of federal troops by civil law enforcement officers to enforce civil law. *United States v. Hartley*, 796 F.2d 112 (5th Cir.1986). The PCA provides, in its entirety, as follows:

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1385 (1992).

■ In 1981, Congress enacted statutes designed to clarify and liberalize the restrictions of the PCA. *See* 10 U.S.C. § 371 et seq. (1992). Pursuant to these provisions, Congress intended to maximize the degree of cooperation between the military and civilian law enforcement to stem the influx of illegal drugs into the country while also recognizing the need to maintain the traditional balance of authority between civilians and the military. *Moon v. State*, 785 P.2d 45 (Alaska Ct.App.1990).

The implementing regulations for these statutes, codified in 32 C.F.R. § 213 (1992), define the phrase "as a posse comitatus or otherwise to execute the laws" to include prohibitions against use of the military in the following forms of direct assistance to civilian law enforcement: (i) interdiction of a vehicle, vessel, aircraft or other similar activity; (ii) a search or seizure; (iii) an arrest, stop and frisk, or similar activity;

and (iv) use of military personnel for surveillance or pursuit of individuals, or as informants, undercover agents, investigators, or interrogators. 32 C.F.R. § 213.-10(a)(3) (1992). *State v. Hayes,* 102 N.C.App. 777, 404 S.E.2d 12 (1991). *See Moon v. State, supra* (fn. 1).

Certain activities involving direct assistance to civilian law enforcement do not, however, violate the PCA, including:

> Actions that are taken for the primary purpose of furthering a military or foreign affairs function of the United States, regardless of incidental benefits to civilian authorities. This provision must be used with caution, and does not include actions taken for the primary purpose of aiding civilian law enforcement officials or otherwise serving as a subterfuge to avoid the restrictions of the Posse Comitatus Act. Actions under this provision may include the following, depending on the nature of the [Department of Defense] interest and the specific action in question:
>
> (A) Actions related to enforcement of the Uniform Code of Military Justice (10 U.S.C. Chapter 47).
>
> . . . .
>
> (F) Such other actions that are undertaken primarily for a military or foreign affairs purpose.

32 C.F.R. § 213.10(a)(2)(i) (1992); *Moon v. State, supra; State v. Hayes, supra.*

In *Moon v. State,* a case factually similar to the case at hand, the Alaska court of appeals considered a policy memorandum issued by the Inspector General of the Department of Defense regarding criminal drug investigative activities by military personnel in order to determine whether a PCA violation had occurred. The memorandum provides that military criminal investigative organizations may undertake investigative actions with respect to a person not subject to the Uniform Code of Military Justice:

> (1) If there are reasonable grounds to believe that such a person has committed a drug offense in conjunction with a member of the Armed Forces and the investigative actions are undertaken to obtain evidence concerning all illegal drug transactions between such person and any member of the Armed Forces, or
>
> (2) If there are reasonable grounds to believe that such person is the immediate source of the introduction of illegal drugs onto the military installation and the investigative actions are undertaken to obtain evidence concerning all persons engaged in drug trafficking on the installation.

*Moon v. State, supra,* at 47–48.

The memorandum further provides that Department of Defense personnel assigned to or under the control of military criminal investigative organizations may be utilized as informants or undercover agents for the purposes of carrying out such investigations. *Moon v. State, supra.*

Together, the PCA and subsequent associated statutory provisions, regulations, and policy clarifications by the regulating agencies reflect that of crucial import in evaluating the propriety of the use of military personnel is the intent and purpose for which the military becomes involved in a civil law enforcement activity. *See State v. Hayes, supra.*

■ When, as here, the state conducts criminal investigations of civilians who are suspected of committing drug offenses in conjunction with a member of the Armed Forces or who are suspected of introducing illegal drugs onto a military installation, then before the military may directly participate in an undercover investigation of these civilians and their off-base activities, the state carries the burden of demonstrating that there exists a nexus between drug sales off base by civilians to military personnel and the military base at which the purchasers are stationed. *See Moon v. State, supra.* Hence, the prosecution has a duty to present evidence to show that, when a military investigation was undertaken, the targeted drug transactions involved military personnel or were connected to sales conducted on a military installation. *See Bissonette v. Haig,* 776 F.2d 1384 (8th Cir.1985); *United States v. Hart-*

ley, supra; United States v. Bacon, 851 F.2d 1312 (11th Cir.1988); Moon v. State, supra; McPherson v. State, 800 P.2d 928 (Alaska Ct.App.1990); State v. Hayes, supra. Cf. Taylor v. State, 645 P.2d 522 (Okla.Crim.App.1982) (military intervention in undercover drug purchase held excessive and in violation of CPA).

■ Here, the trial court presented the prosecution the opportunity to present evidence and, otherwise, appropriately to demonstrate the required nexus. But the prosecution failed to present any evidence at all. Thus, the record concerning the suppression motion is devoid of any evidence which justifies military participation in an undercover investigation of a civilian and her off-base activities.

■ Violations of the PCA do not automatically trigger the exclusionary rule; instead, the issue of suppression should be examined on a case by case basis to determine whether the illegal conduct rises to a level necessitating an exclusion of the tainted arrest. See United States v. Hartley, supra; Taylor v. State, supra.

When, as here, evidence is obtained by the military and is offered in a civilian criminal proceeding, but the actions of the military personnel in acquiring the evidence are not shown to have been of such a manner as to be consistent with a military purpose in conformity with the PCA, the evidence is not admissible.

Here, the record fails to support the court's conclusion and order that the motion should be denied. Thus, we conclude that the trial court committed reversible error in failing to suppress the evidence seized from the defendant.

### II.

■ Defendant also contends that the trial court's advisement regarding her right to testify was coercive, misleading and confusing, and constituted a denial of her right to remain silent. We disagree.

■ Because it involves the consequence that a defendant will forgo a basic and important right, a waiver of the right to remain silent resulting from an election to

testify must be made by the defendant personally and must be made voluntarily, knowingly, and intelligently if it is to be effective. People v. Mozee, 723 P.2d 117 (Colo.1986).

Because what the People on appeal have characterized as a "colloquial advisement" was given in this case, we set forth in its entirety those parts of the record which constitute the advisement.

During a discussion with counsel in a pause in the People's case, the court engaged in the following dialogue with the defendant.

The Court: Ms. Tyler, have you decided whether or not you're going to testify in this case?

Ms. Tyler: I don't know.

The Court: Do you know it's your decision to make? Your lawyers can give you their advice, but they can't tell you which way it will be; right?

Ms. Tyler: Right.

The Court: Do you understand that?

Ms. Tyler: Yes.

Thereafter, the court continued its discussions with counsel, including as to whether the defendant had any previous felony convictions.

The next day, after the People had rested, the court and the defendant conversed as follows:

The Court: Okay.

Ms. Tyler, remember yesterday we started talking about a little bit whether you were going to testify or not? And then I got sidetracked. Have you made up your mind yet on that?

Ms. Tyler: Yes, I will testify.

The Court: You're planning to testify?

Ms. Tyler: Yes.

The Court: Well, okay, that's fine. And that's certainly your right, and I encourage people to testify if they want to. You do understand that once you testify, then whether you're telling the truth becomes an issue in the case. And by that I mean the D.A. gets to cross-examine you and then he gets to suggest

to the jury in his closing argument that you're not telling the truth.

If you don't take the stand, if you don't testify, he doesn't get to do any of that, okay?

Ms. Tyler: Uh-huh.

The Court: The other thing that we'll have to iron out before you take the stand is whether or not you're a convicted felon, because if you are, even though it may not have anything to do with this case, it is considered relevant to whether you're a credible, believable person if you have a prior felony conviction, and so the District Attorney is, by our rules, allowed to bring that up, that you had other cases that you were convicted of, if that's true.

Ms. Tyler: That's fine. He can say what he wants to say.

The Court: You don't mind that?

Ms. Tyler: No, I don't mind.

The Court: No?

Ms. Tyler: I do, Your Honor, but—

The Court: Are there any other convictions other than shoplifting?

Ms. Tyler: That's it.

[The D.A.]: Not that I'm aware of. There are no other felony convictions.

The Court: Would the People be intending to bring that up if she becomes a witness?

[The D.A.]: The felony shoplift? I'll talk it over with [another D.A.] and let you know.

The Court: Okay. Well, I don't think we have to worry about that this morning, do we, [Defense Counsel]?

[Defense Counsel]: No. I would intend to call her last, *and I was hoping not to call her at all*, so—(emphasis added)

After a recess and other discussion concerning witnesses, the following discussion ensued.

The Court: All right.

Then, Ms. Tyler, the D.A. says at this time he will not, unless you—now, here's what happens. He's not going to be able to bring up—or he's agreed not to bring up on his own the fact that you had that shoplifting conviction. But if you take the stand and you say, you know, I'm the best kid in the whole damn world and I ain't never even been arrested, then they can bring it up and say wait a minute, weren't you arrested and didn't you go to court and weren't you convicted and so on and so forth, okay?

But if you take the stand and you just talk about this day and where you were and where you weren't and those sorts of things, then they're not going to bring up this other case you had. Okay?

Ms. Tyler: Uh-huh.

The Court: Okay. But they do get to cross-examine you about any and every other part of what you may testify about, and they may and they will, and I have to tell you both the D.A.s here are competent, and their job is to make it look like you're full of baloney, okay? So that's the risk you run.

Ms. Tyler: Okay.

The Court: If you follow your lawyer's advice and decide not to testify, the risk you run is that the jury will think, hey, wait a minute, if it wasn't really her she would have taken the stand and told us. Even though I will tell them that you don't have to do it, it's your constitutional right not to do it, they might hold it against you. That's the risk you run when you don't take the stand, okay?

Ms. Tyler: Yes.

The Court: Any questions?

Ms. Tyler: No.

The Court: Keep thinking about it, and I'll get back to you later on.

Ms. Tyler: Okay.

After a defense witness testified, the following proceedings took place, after which the defendant took the witness stand.

[Defense Counsel]: Your Honor, I'm planning to call the Defendant at this time, so I believe we need to remove the jury for the *Curtis* advisement.

The Court: Oh, I think we've done all of that. At least I'm satisfied.

Ms. Tyler, is it your decision to go ahead and testify?

Ms. Tyler: Yes.

The Court: All right. Your lawyer's indicated now's the time, so step forward.

This record leads us to conclude that the advisement was episodic, discursive, and given in colloquial terms, including ethnic *patois*. However, we do not find it deficient in substance. Hence, we would recommend only that, in the event of a retrial, the court should give this important advisement in a more formal manner.

### III.

In regard to an issue that may arise on remand, we reject defendant's contention that the trial court erred by allowing the admission of alleged similar transaction evidence.

During the trial, testimony was elicited from an undercover officer relating to meetings with the defendant on certain dates other than that of the charged offense during the course of his "undercover activities."

This testimony does not refer to any bad act or other crime evidence and, as such, does not constitute similar transaction evidence necessitating compliance with the dictates of CRE 404(b). *See People v. Garner*, 806 P.2d 366 (Colo.1991). The reference to other meetings between the undercover officer and the defendant without any indication of criminal activity does not create an inference of other criminal acts, and it was admissible to show the undercover officer's ability to identify the defendant. Thus, the trial court did not err.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

PLANK and MARQUEZ, JJ., concur.