Stephen M. EGGLESTON,
Plaintiff–Appellant,

v.

DEPARTMENT OF REVENUE, MOTOR VEHICLE DIVISION, STATE OF COLORADO, Defendant–Appellee.

No. 94CA0701.

Colorado Court of Appeals,
Div. IV.

April 20, 1995.

The Law Office of John B. Ciccolella, P.C., John B. Ciccolella, Colorado Springs, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Clifton D. Hypsher, Asst. Atty. Gen., Denver, for defendant-appellee.

Opinion by Judge RULAND.

Plaintiff, Stephen M. Eggleston, seeks review of the district court judgment affirming the revocation of his driver's license by the Department of Revenue. We affirm.

Plaintiff failed to stop for an identification check at the south gate of the Air Force Academy. An Air Force security officer pursued plaintiff and stopped his car a short

distance from the gate on the Air Force Academy grounds. When he contacted plaintiff, the security officer detected a strong odor of alcohol and observed slurred speech and bloodshot eyes.

The security officer then requested that plaintiff perform certain roadside sobriety tests, and plaintiff was unable to do so. He then advised plaintiff that he suspected him of driving under the influence of alcohol on "Colorado state roads" and that plaintiff was deemed to have given consent to a chemical test. Plaintiff elected to take a breath test.

Plaintiff was transported to the security police building on the Air Force Academy grounds and was administered a breath test. The test results indicated .162 grams of alcohol per 210 liters of breath. The El Paso County Sheriff's Office was notified. When the sheriff's deputy arrived, the results of the roadside maneuvers and breath test were made available to him, and he issued plaintiff a summons for driving under the influence and an affidavit and notice of revocation.

At the revocation hearing, plaintiff argued that the security officer was not a law enforcement officer under § 42–2–122.1, C.R.S. (1993 Repl.Vol. 17) and that the security officer's actions violated the Posse Comitatus Act (PCA), 18 U.S.C. § 1385 (1988). The hearing officer was not persuaded, and he entered an order revoking plaintiff's license. The district court affirmed the hearing officer's decision.

I.

On appeal, plaintiff concedes that the security officer was justified in stopping his car and in conducting the roadside sobriety tests. However, plaintiff argues that once the security officer determined that the incident should be referred to civilian authorities, any subsequent actions of the security officer violated the PCA. Further, he asserts that the security officer made this determination before the breath test was administered. We agree with the trial court's ruling.

■ The initial PCA was enacted during the Reconstruction Period to eliminate the direct active use of federal troops by civil law authorities. *See People v. Tyler*, 854 P.2d 1366 (Colo.App.1993), *rev'd on other grounds*, 874 P.2d 1037 (Colo.1994). The present PCA provides as follows:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1385 (1988).

■ However, the Act does not prohibit military personnel from acting upon criminal violations committed by civilians on military bases. *United States v. Banks*, 539 F.2d 14 (9th Cir.1976), *cert. denied*, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976). Specifically, when the actions of military personnel are based on probable cause, the officers are authorized by statute to arrest and detain civilians for on-base violations of state law. *See* 10 U.S.C. § 809(e) (1988); 18 U.S.C. § 1382 (1988); *United States v. Banks, supra; see also* 18 U.S.C. § 13 (1988) (Assimilative Crimes Act). This authority exists because the power to maintain order, security, and discipline on a military facility is necessary for military operations. *See Cafeteria & Restaurant Workers Union Local, 473 v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

■ Here, there was a valid independent military purpose to detain plaintiff and to administer the breath test. *See McNeil v. State*, 787 P.2d 1036 (Alaska Ct.App.1990). This purpose was the protection of military personnel, equipment, and guests at the Air Force Academy from a motor vehicle driver suspected of driving under the influence. *Municipality of Anchorage v. King*, 754 P.2d 283 (Alaska Ct.App.1988) (military police entitled to arrest civilian drunk driver and turn him over to authorities to protect persons on base).

The security officer testified that if a blood or breath test of a suspected drunk driver gives a result of .05 or less, the driver is released. But, if it is more, the driver is turned over to civilian authorities. The security officer also testified that if plaintiff had

requested a blood test he would have been transferred to the custody of the El Paso County Sheriff's Department. Thus, it was necessary for the officer to make inquiry of plaintiff concerning chemical tests in order to determine if plaintiff would be released or turned over to civilian authorities.

Moreover, the security police's facilities were the closest and most convenient for administering a breath test. And, the security police have officers who are certified by the Colorado Department of Health to administer the breath test. Finally, it was the sheriff's deputy who issued the summons, affidavit, and notice of revocation. Therefore, the sheriff's deputy was the person executing the state laws. *See United States v. Red Feather*, 392 F.Supp. 916 (D.S.D.1975) (PCA not violated by use of military materials, supplies, or equipment of any type or kind in execution of law). Under these circumstances, we conclude there was no violation of the PCA.

### II.

Plaintiff also contends that the Air Force Security Police are not law enforcement officers who can request testing pursuant to the Express Consent Law, now codified at § 42–4–1301(6), C.R.S. (1994 Cum. Supp.). He argues that because these personnel are not law enforcement officers as defined in any of the pertinent Colorado statutes, they cannot be law enforcement officers for purposes of requesting a chemical test. Again, we are not persuaded.

We view *Delta Sales Yard v. Patten*, 892 P.2d 297 (Colo.1995) as instructive in resolving this issue. There, our supreme court interpreted the phrase "law enforcement authority" as used in § 13–80–103(1)(c), C.R.S. (1987 Repl.Vol. 6A), as it relates to the Governmental Immunity Act, § 24–10–101, et seq., C.R.S. (1994 Cum.Supp.). The court noted that the referenced section provided no definition of the term. Accordingly, the court then determined that it was necessary to give effect to the legislative intent in adopting the statute. To that end, the court noted that this phrase should be accorded its generally accepted meaning.

In this context, the court referred to *Webster's New World Dictionary* 463 (2d ed.1974) for definition of the word "enforce" as compelling observance of the law. From the same source, the court noted the definition of "authority" as having the power or right to enforce laws. The court then concluded that based upon statutes which authorize a state brand inspector to enforce the law, the inspector must be characterized as a law enforcement officer under the applicable statutes.

Here, § 42–1–102(72), C.R.S. (1994 Cum. Supp.) of the Uniform Motor Vehicle Law defines "police officer" as "every officer authorized to direct or regulate traffic or to make arrests for violations of traffic regulations." This statute does not, however, limit the definition to state, county, or municipal personnel. Clearly, the Air Force Security Police are authorized to direct or regulate traffic or make arrests for traffic violations on the grounds of the Air Force Academy. *See* 10 U.S.C. § 809(e) (1988); 18 U.S.C. § 1382 (1988); *see also* 18 U.S.C. § 13 (1988).

Further, we view the legislative purpose in adopting the express consent statute as that of protecting the general public from drunk drivers throughout the state. As a result, we conclude that to adopt a definition of law enforcement officer urged by plaintiff here would frustrate that purpose as to roads and highways situate within a military base. Hence, applying the generally accepted meaning of law enforcement officer, we conclude that the phrase includes the security officers stationed at the Air Force Academy.

Finally, we do not view the ruling by a division of this court in *People v. Urrutia*, 893 P.2d 1338 (Colo.App.1994) as inconsistent with the result we reach here. There, the court interpreted the phrase "public law enforcement agency" as used in § 16–10–103(1)(k), C.R.S. (1986 Repl.Vol. 8A), which authorizes a challenge for cause to any prospective juror who is a compensated employee of such an agency. The issue addressed was whether a security officer for the Department of Defense was an employee of such an agency. The court concluded that he was not because the Department was not a law enforcement arm of the government.

The court did not, however, address the issue whether the individual was a law enforcement officer as distinct from whether he was employed by a law enforcement agency.

The judgment is affirmed.

PLANK and NEY, JJ., concur.