130 P.3d 1037

**Albin J. BRUNE, III, Petitioner–Appellant,**

v.

**ADMINISTRATIVE DIRECTOR OF the COURTS, STATE OF HAWAI'I, Respondent–Appellee.**

No. 27108.

Supreme Court of Hawai'i.

March 16, 2006.

Earle A. Partington, Honolulu, on the briefs, for petitioner-appellant.

Girard D. Lau, Deputy Attorney General, State of Hawai'i, on the briefs, for respondent-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that the completion of certain Administrative Driver's License Revocation Office (ADLRO) forms by Petitioner–Appellant U.S. Navy Lieutenant Albin J. Brune, III (Appellant) and subsequent transmittal of the forms by a civilian police officer for the Department of the U.S. Navy (the Navy) to the ADLRO do not violate the Posse Comitatus Act (the PCA)[1] inasmuch as (1) the

---

1. The Posse Comitatus Act (PCA) is codified at 18 U.S.C. § 1385. It provides that:

    Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both.

enforcement of Hawai'i state law against military personnel on a military base does not infringe on civil authority, and (2) a primary military purpose for the completion and transmittal was established. In light of the foregoing, the January 10, 2005 "Decision and Order Affirming Administrative Revocation" of the district court of the first circuit[2] (the court), which upheld the suspension of Appellant's driver's license, is affirmed.

Appellant was arrested on October 3, 2004, near the intersection of Center Drive and Kamehameha Highway, on the Pearl Harbor Naval reservation, by Navy Civilian Police Officer Jose Valentin–Santana (Officer Santana) of Navy Regional Security Hawai'i, Pearl Harbor, for operating a vehicle under the influence of an intoxicant, Hawai'i Revised Statutes (HRS) § 291E–61(a) (Supp. 2004).

After stopping the vehicle, Officer Santana read to Appellant the Special Assistant United States Attorney (SAUSA) form entitled "Implied Consent Warning/Waiver Certificate and Hawaii Administrative Driver's License Revocation Office" form (the Implied Consent form). The Implied Consent form refers to (1) "Prescribing Directive[s]," (2) "Authority," (3) "Principle Purpose," (4) "Routine Use [for the form]," and (5) "mandatory or voluntary disclosure and effect on individual not providing information." According to the Implied Consent form, this "data" is provided under the mandate of the Privacy Act of 1974.[3] Officer Santana completed the Implied Consent form, and the Navy forwarded it to the ADLRO with a Navy police report and a SAUSA form entitled "Administrative Driver's License Revocation Document Checklist" (the ADLRD Checklist). The ADLRD Checklist enumerates the forms that must be included in the packet submitted to the ADLRO and the forms that must be provided to the driver.

Appellant was also issued a Notice of Administrative Revocation on October 3, 2004, informing him of the "administrative revocation of [his] license and privileges" for one year. On October 8, 2004, Appellant's one-year driver's license revocation was sustained by an ADLRO review officer. Appellant requested an administrative hearing, which took place on November 10, 2004.[4]

The hearing began with the hearing officer relating the procedure to be followed. Subsequently, the hearing officer received most of the ADLRO file into evidence, as well as subpoenas Appellant had requested for the arresting officer and the Intoxilyzer operator. Also admitted was a subpoena request

---

2. The Honorable William Cardwell presided.

3. This aspect of the Implied Consent form has not been objected to by Petitioner–Appellant Albine J. Brune, III (Appellant) or Respondent–Appellee Administrative Director of the Courts, State of Hawai'i (the Director). The Implied Consent form states in relevant part:

> Data Required by the Privacy Act of 1974
> Title of Form: Implied Consent Warning/Waiver Certificate
> Prescribing Directive: [Army Regulation] 190–5; [Office of the Chief of Naval Operations (OPNAV)] 11200.5C; [Air Force Regulation] 125–14; [Marine Corps Order] 5110.1C; 18 U.S.C. Section 3118; and Administrative Revocation Law, Hawaii Revised Statutes.
> Authority: Title 10, United States Code, Section 3012
> Principle Purpose: To prepare a record which accurately identifies a person suspected of driving under the influence of alcohol or other drug(s) who has been advised of the sanctions for failure to submit to an evidentiary test(s) for determining the presence of alcohol or other drugs.

> Routine Use: The completed form becomes part of the police record concerning the incident. The information provided on the form is to facilitate filing and retrieval of the form for use by law enforcement officials and military commanders in disciplinary, administrative and judicial actions, *and may also be used by Hawaii Driver's License Administrative Revocation Section officials.*

(Some emphases in original and emphasis added.) The Implied Consent form also informs the driver that he or she has been arrested for operating a vehicle under the influence of an intoxicant. It details the circumstances under which a driver's license will be administratively revoked. Upon revocation, the Implied Consent form lists the applicable time periods for which the administrative revocation will be imposed. Further, definitions of related terms, such as "alcohol enforcement contact," are provided. The consequences of an administrative revocation are detailed. Finally, the Implied Consent form indicates whether alcohol or drug tests were submitted to or refused and provides for the signatures of the driver and arresting officer.

4. Hearing Officer Leonor Tamoria presided.

for the ADLRO "Chief Adjudicator"; this subpoena was denied.

Counsel for Appellant notified the hearing officer that before the hearing, a woman asked to attend the hearing and offered to be searched. This woman was not willing to present identification and sign in, declaring it a violation of her privacy. Appellant's counsel stated for the record that the hearing officer denied her access to the hearing, unless the identification and sign-in procedure was followed.

Counsel for Appellant also requested a particular procedure be followed, and a copy of the procedure was made part of the record. Appellant objected to the hearing officer's procedure but was ultimately overruled.

Lt. David Thomas (Lt. Thomas), an Intoxilyzer operator, was then called to testify. He related that he is a lieutenant with the Pearl Harbor police and is a "civilian, government service, general schedule employee." [5] He further reported that the police force is under direct military command.

Lt. Thomas was shown the ADLRD Checklist. Lt. Thomas confirmed that he was familiar with the form and that the purpose of the ADLRD Checklist was to ensure that the documents required to be sent to the ADLRO were transmitted. Lt. Thomas then identified the Implied Consent form, with which he was also acquainted. He affirmed that the Implied Consent form is to be forwarded to the ADLRO for compliance with Hawaii's implied consent law.

Officer Santana testified that he is a civilian police officer for the Navy. According to the officer he stopped Appellant in the Hale Moke housing area, which is a part of the Pearl Harbor Naval reservation. After being shown the Implied Consent form, he, like Lt. Thomas, testified that it is forwarded to

the ADLRO in compliance with the implied consent law.

On November 15, 2004, the hearing officer, on behalf of Respondent–Appellee Administrative Director of the Courts, State of Hawai'i (the Director),[6] issued her "Findings of Fact, Conclusions of Law, and Decision" (the Decision). In the Decision, the hearing officer stated that she is authorized by HRS § 291E–38 (Supp.2005) only to conduct an administrative hearing concerning the revocation of Appellant's driver's license and that constitutional claims concerning the ADLRO security measures are outside the scope of that provision. Appellant argued that the PCA was violated because there was not a separate military purpose for the completion and subsequent transmittal of the Implied Consent form and the ADLRD Checklist and that the military has its own administrative revocation proceedings. The hearing officer concluded that Appellant's arguments regarding the PCA were unpersuasive, declaring that the State has concurrent jurisdiction of violations of HRS § 291E–61 (Supp.2005) [7] which occur on a military installation and "there is nothing that specifically prohibits military personnel from carrying out their duties with respect to on-base/military reservation violations for operating a vehicle while under the influence of an intoxicant." She further stated that the arresting officer is not required to explain every consequence or aspect related to a refusal or taking of a blood alcohol concentration (BAC) test and failing it. The hearing officer made the following findings of fact:

1. On October 3, 2004, at 2:50 a.m., in the County of Honolulu, Arresting Officer Jose Valentin–Santana observed a (a 1991 Volvo wagon with Hawaii license number EDZ–638) vehicle driven by the [Appellant]. The officer observed the vehicle travelling north-east on Center Drive near

---

**5.** In describing the police force at Pearl Harbor, Lt. David Thomas testified that "it is a mixed contingent, civilian, ['GS'] employees and active duty military personnel."

**6.** Hawai'i Revised Statutes (HRS) § 291E–1 (Supp.2005) states that " 'Director' means the administrative director of the courts or any other person within the judiciary appointed by the director to conduct administrative reviews or

hearings or carry out other functions relating to administrative revocation under part III [entitled 'Administrative Revocation Process']." *See Soderlund v. Admin. Dir. of the Courts*, 96 Hawai'i 114, 115 n. 1, 26 P.3d 1214, 1215 n. 1 (2001) (referring to the statutory definition of "director" as including a hearing officer).

**7.** No authority was cited for the reference to "concurrent jurisdiction."

the intersection with Kamehameha Highway. The officer saw the vehicle travelling at a high rate of speed and observed the vehicle executed [sic] a left turn at the intersection against a red light without stopping.

2. Officer Santana pulled the vehicle over, approached the driver's side of the vehicle, and spoke with [Appellant]. Officer Santana identified [Appellant] with his driver's license and informed him of the reason for the traffic stop.

3. Officer Santana, as he spoke with [Appellant], detected a strong odor of an alcoholic beverage on [Appellant's] breath, eyes that were red and bloodshot, and slurred speech.

4. The result of [Appellant's] field sobriety tests were not considered by this Hearing Officer based upon the foundational testimony of the Arresting Officer. However, Officer Valentin's personal observations that [Appellant] was unsteady on his feet, difficulty with balance, swaying, and inability to follow [sic] as instructed were considered by this Hearing Officer.

5. [Appellant] was arrested for operating a vehicle under the influence of an intoxicant.

6. [Appellant] was read the sanctions of [HRS chapter] 291E, Part III. [Appellant] did not refuse to take an alcohol concentration test by a breath test.

7. [Appellant's] prior driving record in the State of Hawaii shows no prior alcohol enforcement contact, as defined by [HRS] § 291E–1, from the State of Hawai'i traffic violator database ("TRAVIS").

8. [Appellant's] driver's license was revoked by the Administrative Review Officer for the period November 3, 2004, through to and including November 2, 2005. However, this Hearing Officer amended the administrative revocation to a three month period, from November 3, 2004 to February 2, 2005.

The hearing officer rendered the following conclusions of law:

1. The Director concludes there existed reasonable suspicion, the traffic viola-tion(s), to stop the motor vehicle driven by [Appellant].

2. The Director concludes there existed probable cause that [Appellant] drove, operated, or was in actual physical control of the vehicle, while under the influence of an intoxicant.

3. [Appellant] did not refuse to take an alcohol concentration test.

4. The Director separately and independently concludes, by a preponderance of the evidence, without consideration of the alcohol concentration test result that [Appellant] drove, operated, or was in actual physical control, of the vehicle while under the influence of an intoxicant.

Appellant's driver's license thus was revoked for three months. The hearing officer made no findings or conclusions regarding the PCA.

On November 17, 2004, Appellant filed a Petition for Judicial Review. On January 10, 2005, the court affirmed the hearing officer via a decision and a separate judgment. The court concluded that the PCA does not prohibit a military police officer from acting upon an on-base violation of HRS § 291E–61 by an active-duty Navy officer. The court further ruled that the hearing was conducted in accordance with HRS § 291E–38. It was noted that the issue as to whether the ADL-RO sign-in procedure violated Appellant's right to an open hearing was then pending before this court, but that the ADLRO had already determined that Appellant's right was not violated. The court rejected Appellant's arguments that the hearing officer erred in relying on a field sobriety test and in citing to unpublished decisions because the hearing officer noted that either she was not relying on such matters or, according to the court, there was no error.

### I.

On appeal Appellant argues that the court erred in (1) "failing to set aside [Appellant's] license revocation because the ADLRO paperwork, at the time of [Appellant's] arrest, was completed and transmitted to the ADL-RO by Department of Defense police officers in violation of the [PCA]"; (2) "holding that

[Appellant] was neither denied [ (a) ] his right to a hearing on the ADLRO restrictions on public access nor [ (b) ] public access to his ADLRO hearings—all in violation of his state and federal constitutional rights to a public hearing"; (3) "failing to uphold [Appellant's] federal and state constitutional rights to due process of law and the clear mandate of [HRS] Chapter 291E, Part III"; (4) "holding that the requirement of [HRS] § 291E–34(a)(2) was not violated in this case"; and (5) "failing to reverse the hearing officer for citing to unpublished district court ADLRO decisions to justify her decision." In conjunction with his arguments, Appellant asserts that (1) the Implied Consent form does not have a military purpose; (2) there is a contradiction in HRS § 291E–38(a) which declares the revocation hearing will "review the [administrative review] decision," yet allows motorists to call witnesses and offer evidence, suggesting that the hearing is *de novo*; (3) the hearing officer improperly adhered to *Desmond v. Admin. Dir. of the Courts*, 91 Hawai'i 212, 219, 982 P.2d 346, 353 (App.1998) [hereinafter *"Desmond I"*] (advising hearing officers to inform the parties at the beginning of the hearing of the procedure to be followed but not requiring hearing officers to follow the procedure set forth by Appellant), *rev'd on other grounds*, 90 Hawai'i 301, 978 P.2d 739 (1999) [hereinafter *"Desmond II"*]; (4) the procedure set forth in HRS chapter 291E, Part III, which requires that there be a valid chemical test result or refusal for the ADLRO to have jurisdiction, was disregarded; and (5) the ADLRO Notice of Administrative Revocation lacks any "explanation of distinction" between the administrative revocation and the criminal suspension "in clear language," in violation of HRS § 291E–34(a)(2) (Supp. 2005).

In response, the Director contends that (1) "[Appellant's] arrest and processing were proper and the [PCA] does not affect this case"; (2) "the Hawaii Supreme Court's ruling in *Freitas [v. Admin. Dir. of the Courts*, 104 Hawai'i 483, 92 P.3d 993 (2004),] does not require reversal or remand"; (3) "[Appellant's] due process attack on the procedures used at his administrative hearing has already been rejected by the Intermediate Court of Appeals and the Hawaii Supreme Court, and is without merit"; (4) "neither a valid BAC result or a valid refusal is required for the ADLRO to have jurisdiction; the hearing officer may properly uphold a revocation even if she strikes a chemical BAC test, by basing her finding that [Appellant] operated under the influence on OTHER evidence" (capitalization in original); (5) "the explanation provided in the notice of administrative revocation more than adequately explained the distinction between the administrative revocation and the criminal license suspension"; and (6) "the hearing officer did not reversibly err in citing to unpublished district court decisions."

In reply, Appellant again maintains that the court erred in (1) "failing to set aside [Appellant's] license revocation because the ADLRO paperwork, at the time of [Appellant's] arrest, was completed and transmitted to the ADLRO by Department of Defense police officers in violation of the [PCA]," and (2) "holding that [Appellant] was neither denied [ (a) ] his right to a hearing on the ADLRO restrictions on public access nor [ (b) ] public access to his ADLRO hearings—all in violation of his state and federal constitutional rights to a public hearing." Appellant requests that this court reverse the court's decision upholding his driver's license revocation and order that Appellant's driver's license be returned to him.

## II.

■ It has been established that

[j]udicial review of a decision of the Director regarding the revocation of a driver's license is governed by HRS § 286–260, and is limited to the record of the administrative hearing and the questions whether the Director exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record. Review of a decision made by [a] court upon its review of an [administrative] decision is a secondary appeal. The standard of review is one in which this court must

determine whether the court [under review] was right or wrong in its decision[.] *Farmer v. Admin. Dir. of the Court, State of Hawai'i,* 94 Hawai'i 232, 236, 11 P.3d 457, 461 (2000) (internal quotation marks and citations omitted).

### III.

Arguments (2), (3), and (5) and points in conjunction (2), (3), and (4) raised therewith by Appellant have been resolved previously. *See Custer v. Admin. Dir. of the Courts,* 108 Hawai'i 350, 120 P.3d 249 (2005); *Dunaway v. Admin. Dir. of Courts,* 108 Hawai'i 78, 117 P.3d 109 (2005); *Freitas v. Admin. Dir. of Courts,* 108 Hawai'i 31, 116 P.3d 673 (2005) [hereinafter *Freitas II* ]. Accordingly, we do not address these arguments.

### IV.

■ Argument (4) and point (5) in conjunction with this argument are the same arguments made in *Dunaway,* in which we held that the notice adequately explained the difference between the administrative proceeding and the criminal proceeding. The instant form is materially the same as the form in *Dunaway.*[8] Therefore, as we concluded in *Dunaway,* the form satisfies HRS § 291E–34(a)(2), which mandates, in relevant part, that "[t]he notice of administrative revocation shall provide, at a minimum and in clear language, ... [a]n explanation of the distinction between administrative revocation and a suspension or revocation imposed under section 291E–61 or 291E–61.5."

### V.

■ In the remaining argument (1) and point in conjunction, Appellant contends that the ADLRO "paperwork," at the time of his arrest, was completed and transmitted to the ADLRO by military police officers in viola-

tion of the PCA because (1) there is no independent and primary military purpose in the *completion* of the Implied Consent form and the ADLRD checklist by the arresting officer or in the *transmittal* of them by the Navy to the ADLRO and (2) the ADLRD Checklist has no military purpose because *on its face* the purpose of the form is to enforce Hawaii's administrative driver's license revocation law. Appellant admits that the military may enforce federal "driving under the influence" laws on military bases. He points out that the Navy has adopted an Office of the Chief of Naval Operations (OPNAV) Instruction, namely 1120.5C, which provides for a federal administrative driver's license revocation scheme. Appellant maintains, therefore, that the sole function of the actions by the arresting officer and the subsequent procedure is to enforce the *State's* administrative driver's license revocation law.

The Director in essence relies on the "military purpose" doctrine, which this court recognized in *State v. Pattioay,* 78 Hawai'i 455, 460, 896 P.2d 911, 916 (1995). That doctrine holds that if the military officers are pursuing a legitimate military purpose independent of the involvement with civilian law enforcement in question, the PCA is not violated. *Id.* In *Pattioay,* U.S. Army Criminal Investigation Department undercover agents were working with the Honolulu Police Department to "target" suspected civilian drug dealers. *Id.* at 456–57, 896 P.2d at 912–13. However, as *Pattioay* indicated, "the 'primary military purpose' exception 'must be used with caution, and does not include actions taken for the primary purpose of aiding civilian law enforcement officials or otherwise serving as a subterfuge to avoid the restrictions of the [PCA].' " *Id.* at 460–61, 896 P.2d at 916–17 (quoting 32 C.F.R. § 213.10(a)(2)(i)). *See United States v. Chon,* 210 F.3d 990, 994 (9th Cir.2000) (finding a PCA exception where there is an "indepen-

---

8. The form is the same as the form in *Dunaway v. Admin. Dir. of Courts,* 108 Hawai'i 78, 117 P.3d 109 (2005), except the words "or § 291E–61.5" in the clause quoted below were not in the *Dunaway* form:

> The administrative revocation process is a civil administrative proceeding that is separate and distinct from criminal prosecution. Criminal charges filed pursuant to HRS § 291E–61 or

§ 291E–61.5 may be prosecuted concurrently with the administrative proceeding.

(Emphasis added.) HRS § 291E–61.5 (Supp. 2005) is entitled "Habitually operating a vehicle under the influence of an intoxicant", whereas HRS § 291E–61 (Supp.2005) is entitled "Operating a vehicle under the influence of an intoxicant".

dent military purpose" for military actions). The Director argues that all military actions in response to on-base violations of any nature are not prohibited by the PCA. Specifically, the Director asserts that a PCA violation does not occur because "it is essentially a given that enforcement of civil laws against *military personnel on a military base* are undertaken primarily for a military purpose." (Emphasis in original.)

## VI.

### A.

The purpose of the PCA is to restrict military intrusion into civilian matters, except where Congress has recognized a special need for military assistance in law enforcement.[9] *United States v. Johnson,* 410 F.3d 137 (4th Cir.2005). *See also* Sean J. O'Hara, *The Posse Comitatus Act Applied to the Prosecution of Civilians,* 53 U. Kan. L.Rev. 767 (2005); Clarence I. Meeks, *Illegal Law Enforcement: Aiding Civil Authorities in Violation of the Posse Comitatus Act,* 69 Mil. L.Rev. 83 (1975); Brian L. Porto, *Construction and Application of Posse Comitatus Act (18 U.S.C.A. § 1385), and Similar Predecessor Provisions, Restricting Use of United States Army and Air Force to Execute Laws,*

---

9. For example, pursuant to the Civil Disturbance Statutes, a state may request military assistance in enforcing civilian laws if the state is experiencing civil unrest, *e.g.* riots. 10 U.S.C. §§ 331–335 (2000).

10. The Ninth Circuit has held that:

Although the PCA does not directly reference the Navy or Marine Corps, we do not construe this omission as congressional approval for Navy involvement in enforcing civilian laws.... Congress has, in fact, required the Secretary of Defense to "prescribe such regulations as may be necessary" to prohibit "direct participation by a member of the Army, *Navy,* Air Force, or Marine Corps" in law enforcement activities. *10 U.S.C. § 375 (1998).* The Department of Defense (DoD) thereafter, by directive, made the PCA applicable to the *Navy* and Marine Corps as a "matter of DoD policy," DoD Directive 5525.5(C) [(Jan. 15, 1986)]; the *Secretary of the Navy,* using nearly identical language, has adopted this policy, *see* [Secretary of the Navy Instruction] 5820.7B. *United States v. Chon,* 210 F.3d 990, 993 (9th Cir.2000) (emphases added) (footnote and citation omitted). *See also* Sean J. O'Hara, *The*

141 A.L.R. Fed. 271 (1997). While the PCA explicitly applies to only the "Army or the Air Force," the Ninth Circuit Court of Appeals has held that the Act also extends to the Navy and the Marine Corps.[10]

### B.

The court's decision as to Appellant's PCA argument states as follows:

[Appellant's] reliance on the [PCA] is misplaced. In *United States v. Banks,* 539 F.2d 14 (9th Cir.1976), the court, by the esteemed Judge Choy, held that the [PCA] does not prohibit military personnel from acting upon on-base violations committed by civilians. *Given this, it is axiomatic that the [PCA] does not prohibit military police from acting upon on-base violations committed by an active-duty Navy officer.* As to the "primary military purpose," Judge Choy stated in *Banks:* "The power to maintain order, security and discipline on a military reservation is necessary to military operations." *Id.* To suggest that something more need be shown other than that this violation took place on Pearl Harbor Naval reservation and was committed by a Navy officer is to ignore the obvious military interest in securing compliance with state law by its personnel on its prop-

---

*Posse Comitatus Act Applied to the Prosecution of Civilians,* 53 U. Kan. L.Rev. 767, 767 (2005); Matthew Carlton Hammond, *The Posse Comitatus Act: A Principle in Need of Renewal,* 75 Wash. U. L.Q. 953 (1997). *But see United States v. Yunis,* 924 F.2d 1086, 1093 (D.C.Cir.1991) (stating that "nothing in this history suggests that we should defy the express language of the Posse Comitatus Act by extending it to the Navy"); *Schowengerdt v. Gen. Dynamics Corp.,* 823 F.2d 1328, 1340 (9th Cir.1987) (concluding that the PCA "by its express terms is inapplicable to Navy involvement in law enforcement"). 10 U.S.C. § 375, referred to in *Chon* and referenced by both Appellant and the Director, provides that: The Secretary of Defense shall prescribe such regulations as may be necessary to ensure that any activity (including the provision of any equipment or facility or the assignment or detail of any personnel) under this chapter does not include or permit direct participation by a member of the Army, *Navy,* Air Force, *or Marine Corps* in a search, seizure, arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law.
(Emphases added.)

erty. Indeed, the only reason the Court found a violation of the [PCA] in [*Pattioay* ] was because there was no evidence that the illegal activity involved military personnel or took place on a military reservation. *Pattioay, supra* at 470, 896 P.2d 911. Both were shown and admitted in this case.

(Emphasis added.) We believe that the court was correct. In *Pattioay,* it was stated that "[w]here the target of a military investigation is a civilian *and there is no verified connection to military personnel,* the PCA prohibits military participation in activities designed to execute civilian laws." 78 Hawai'i at 464, 896 P.2d at 920 (emphasis added). In that case, the prosecution argued that *State v. Hayes,* 102 N.C.App. 777, 404 S.E.2d 12 (1991), should control. *Pattioay,* 78 Hawai'i at 463–64, 896 P.2d at 919–20. In *Hayes,* the North Carolina Court of Appeals held that the PCA was not violated when military investigators assisted local law enforcement officers in arresting an absent-without-official-leave soldier. 404 S.E.2d at 14–15. This court, in *Pattioay,* found *Hayes* to be clearly distinguishable because the defendant was a member of the military. *Pattioay,* 78 Hawai'i at 464, 896 P.2d at 911.

Thus the restrictions of the PCA do not appear to apply in the instant case as Appellant is a member of the military and was arrested on the Pearl Harbor Naval reservation. *See United States v. Thompson,* 33 M.J. 218, 220–21 (C.M.A.1991) (concluding that the PCA was not violated when military agents accompanied local law enforcement agents to the off-base home of a senior airman with the U.S. Air Force to search the apartment and seize stolen property); *cf. United States v. Griley,* 814 F.2d 967, 976 (4th Cir.1987) (stating that "[i]t is well settled that military investigators may look into violations of civil law that occur on military bases, or within military operations" and

holding that the PCA was not violated when a civilian defendant's home located on a military base was searched by a Federal Bureau of Investigation special agent and a military investigator for stolen property when it was not known whether the thief was a military employee or a civilian (internal citations omitted)). We thus agree with the reasoning of the North Carolina Court of Appeals in this respect.

## VII.

Moreover, a military purpose supporting enforcement of the ADLRO law on a military reservation has been established. As advanced by the Director, many courts have concluded that the PCA is not violated if there is an independent, legitimate, and primary military purpose that justifies the involvement of military personnel in a law enforcement activity. *See, e.g., Chon,* 210 F.3d at 994; *Eggleston v. Dep't of Revenue, Motor Vehicle Div., State of Colo.,* 895 P.2d 1169, 1170 (Colo.Ct.App.1995) (concluding that a primary military purpose of "the protection of military personnel, equipment, and guests at the Air Force Academy from a motor vehicle driver suspected of driving under the influence" existed and the PCA was not violated when an Air Force security officer stopped a civilian motorist on Air Force Academy grounds for suspicion of driving under the influence of alcohol and forwarded the results of a sobriety and breath test to a sheriff's deputy because "the power to maintain order, security, and discipline on a military facility is necessary for military operations"); *Pattioay* at 460, 896 P.2d at 916.

In the instant case, Appellant only challenges the completion and transmittal of the ADLRO forms. Therefore, he implicitly concedes that Officer Santana could stop him for suspicion of DUI. Under the Assimilative Crimes Act (ACA),[11] Hawai'i traffic laws may

---

11. Appellant cites to OPNAV directive 11200.5C, which he asserts contains the military's "own administrative procedure for revoking driving privileges on military bases." Appellant states that Department of Defense Directive (DDD) 5525.4 (Nov. 2, 1981) is contained in the appendix to his opening brief. DDD 5525.4 cites the Assimilative Crimes Act (ACA) as a reference. DDD 5525.4 lists as its purpose the establish-

ment of policies to enforce state traffic laws on Department of Defense installations. The ACA provides, in pertinent part, as follows:

(a) *Whoever within [a federal enclave] ... is guilty of any act ... which,* although not made punishable by any enactment of Congress, *would be punishable if committed ... within the jurisdiction of the State, ...* in which such

apply to the instant naval base. Therefore, enforcement of state traffic laws on base, including investigation of DUI cases, may be deemed to be in "the normal course of military ... operations." 10 U.S.C. § 371.[12] *See also* Department of Defense Directive 5525.5 (Jan. 15, 1986).[13] On the face of 10 U.S.C. § 371, information gathered in this way may be provided to state or local civilian law enforcement officials.

As stated *supra*, Appellant cites OPNAV Instruction 11200.5C (one of the "prescribing directives" in the "data" section), as support for his argument that "the military has its own administrative procedure for revoking driving privileges on military bases" because it provides for a federal administrative driver's license revocation scheme. However, we are not persuaded that such a scheme precludes enforcement of HRS chapter 291E by military personnel on a military base. Such enforcement does not infringe on the PCA. Hence, the fact that there may be a federal counterpart for a driving under the influence

violation does not prevent resort to local law, and there is no impingement of civilian authority when state law is enforced on a military base. The Summary of Change sheet [14] for this OPNAV Instruction explicitly applies the ACA. The OPNAV Instruction states that it "[m]andates the assimilation of host State traffic codes for D[epartment] o[f] D[efense] installations."

In addition, Paragraph 4–20(a) of the same OPNAV Instruction, entitled "State–Armed Forces Traffic Workshop Program," indicates that "[t]his program is an organized effort to coordinate military and civil traffic safety activities throughout a State or area. Installation commanders will cooperate with State and local officials in this program and provide proper support and participation." Also, listed as "prescribing directives" on the Implied Consent form are 18 U.S.C. § 3118 [15] and the Administrative Revocation Law, Hawai'i Revised Statutes.

As stated previously and as indicated on the Implied Consent form, pursuant to 10

place is situated, by the laws thereof in force at the time of such act ... *shall be guilty of a like offense and subject to a like punishment.*
(b)(1) ... [F]or purposes of subsection (a) ... that which may or shall be imposed through judicial or administrative action under the law of a State, ... for a conviction for operating a motor vehicle under the influence of a drug or alcohol, shall be considered to be a punishment provided by that law.
*18 U.S.C. § 13* (emphases added).

**12.** 10 U.S.C. § 371, entitled "Use of information collected during military operations," states in relevant part:
(a) The Secretary of Defense may, in accordance with other applicable law, *provide to* Federal, *State, or local civilian law enforcement officials any information collected during the normal course of military* training or *operations that may be relevant to a violation of any* Federal *or State law* within the jurisdiction of such officials.
(Emphases added.)

**13.** Appellant cites to Department of Defense Directive 5525.5 in his Opening Brief. Enclosure 2 of DDD 5525.5 states:
Military Departments and Defense Agencies *are encouraged to provide to Federal, State, or local civilian law enforcement officials any information collected during the normal course of military operations that may be relevant to a violation of any Federal or State law within the*

*jurisdiction of such officials.* The Secretaries of the Military Departments and Directors of the defense Agencies shall prescribe procedures for releasing information upon reasonable belief that there has been such a violation. (Emphasis added.) In the instant case, the "information [was] collected during the normal course of military operations" and the instant forms are "prescribe[d] procedures for releasing information upon reasonable belief that there has been such a violation". DDD 5525.5.

**14.** The Summary of Change sheet describes the purposes of the revision to OPNAV 11200.5C.

**15.** 18 U.S.C. § 3118, entitled "Implied consent for certain tests," provides in relevant part:
(a) Consent. Whoever operates a motor vehicle in the special maritime and territorial jurisdiction of the United States consents thereby to a chemical test or tests of such person's blood, breath, or urine, if arrested for any offense arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction. The test or tests shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving a motor vehicle upon the special maritime and territorial jurisdiction of the United States while under the influence of drugs or alcohol in violation of the laws of a State, territory, possession, or district.

U.S.C. § 3013,[16] the purpose of the Implied Consent form is "[t]o prepare a record which accurately identifies a person suspected of driving under the influence of alcohol or other drug(s) who has been advised of the sanctions for failure to submit to an evidentiary test(s) for determining the presence of alcohol or other drug(s)." Furthermore, as related before, drivers are informed via the Implied Consent form that the "routine use" of the form includes use by the ADLRO.

The completed form becomes part of the police record concerning the incident. The information provided on the form is to facilitate filing and retrieval of the form for use by law enforcement officials and military commanders in disciplinary, administrative and judicial actions, and *may also be used by Hawaii Driver's License Administrative Revocation Section officials.*

(Emphasis added.) Therefore, we conclude that there was a sufficient independent military purpose demonstrated on the record for completion and transmittal of the subject forms.

## VIII.

For the foregoing reasons, the court's January 10, 2005 "Decision and Order Affirming Administrative Revocation" is affirmed.

---

**16.** The Special Assistant United States Attorney form refers to 10 U.S.C. § 3012. Section 3012 became Section 3013 in 1986, and Section 3013 appears to be the statute that grants the authority necessary for transmittal of the Implied Consent form to the ADLRO pursuant to the mandates of the Privacy Act of 1974.