Electronically Filed
Intermediate Court of Appeals
30605
17-JUL-2013
08:11 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---


PATRICK M. McGRAIL, Petitioner-Appellant
vs.
ADMINISTRATIVE DIRECTOR OF THE COURTS,
STATE OF HAWAI'I, Respondent-Appellee

NO. 30605


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(Honolulu Division)
(Case No. JR 1DAA-10-0003 (08-00558))

July 17, 2013


NAKAMURA, CHIEF JUDGE, AND LEONARD AND REIFURTH, JJ.


OPINION OF THE COURT BY NAKAMURA, CHIEF JUDGE

Petitioner-Appellant Patrick McGrail (McGrail) appeals
the administrative revocation of his driver's license after he
was arrested for driving under the influence of an intoxicant
(OVUII). A police officer, who reportedly observed McGrail
driving unsafely and erratically, made a traffic stop of
McGrail's car. A second officer, who had not observed McGrail's
driving, later arrived at the scene, spoke to McGrail, and
arrested McGrail for OVUII after witnessing McGrail perform field
sobriety tests.

At McGrail's administrative revocation hearing, the hearing officer struck the report of the police officer who had made the traffic stop of McGrail's car (Stopping Officer) because the report was not a sworn statement. However, the hearing officer, over McGrail's objection, considered the Stopping Officer's unsworn statements that were included in a sworn report prepared by the police officer who arrested McGrail (Arresting Officer), in finding that the police had reasonable suspicion to stop McGrail's car. The Stopping Officer did not testify at the revocation hearing.

The question presented in this appeal is whether the hearing officer could properly consider the unsworn statements of the Stopping Officer that were included in the sworn police report of the Arresting Officer in determining that the police had reasonable suspicion to stop McGrail's car. As explained below, in light of the importance placed by the Hawai'i Legislature on sworn statements to ensure reliability in the administrative revocation process, Hawaii Revised Statutes (HRS) Chapter 291E, Part III, we conclude that the answer to this question is no. Accordingly, we reverse the administrative revocation of McGrail's driver's license.

BACKGROUND

I.

Honolulu Police Department (HPD) Officer Jasmine McGuire (Officer McGuire or Stopping Officer) conducted a traffic stop of McGrail car. Officer McGuire prepared a police report that described the observations that led to her stopping McGrail's car, as follows:

> At about 2235 hours I was traveling east bound on Kalakaua Avenue in the mauka most lane when I observed a sedan in the same lane ahead of me with no tail lights. I observed that this vehicle appeared to be moving unsmooth and that this vehicle now about 15 feet in front of me then made a left turn onto Pau Street without signaling.
>
> I then followed this vehicle onto Pau Street where I observed that the vehicle appeared to be making unsmooth

2

> movements while changing lanes into the [Koko Head] most
> lane mauka bound. [1/]
>
> I then observed this vehicle strike the [Koko Head] most
> sidewalk or curb area with its front passenger side tire, no
> damages observed or reported. The vehicle then appeared to
> jerk suddenly away from the curb and turn left onto Ala Wai
> Boulevard where it headed directly for the mauka most lane
> and appeared to be heading straight for the retaining curb.

At about 10:40 p.m., HPD Officer Marc Cobb-Adams (Officer Cobb-Adams or Arresting Officer) responded to a call to assist Officer McGuire regarding her traffic stop and subsequently arrived at the scene. Officer McGuire informed Officer Cobb-Adams of the facts and circumstances regarding the traffic stop, which Officer Cobb-Adams documented in his police report as follows:

> On 09-17-09 at about 2240 hours, Officer J. MCGUIRE informed
> me of the facts and circumstances of the stop. She related
> that she observed the driver traveling east bound on
> Kalakaua Ave[.] with out any headlights. She further
> related that the vehicle failed to signal as it made a left
> turn on to Pau St. She then related that she observed the
> vehicle strike the sidewalk or curb area with its front
> passenger side tire, but no damages observed or reported.

Officer Cobb-Adams spoke to McGrail and noticed that McGrail's eyes were watery and glassy and that there was a strong odor of alcohol coming from his breath and body.

At Officer Cobb-Adams's request, McGrail agreed to participate in standard field sobriety tests. McGrail staggered as he exited his vehicle and performed poorly on the field sobriety tests. HPD Officer Michele Yoshiki (Officer Yoshiki), who had also responded to the scene, gave McGrail a preliminary alcohol screening test, which McGrail "failed."

---

1/ "Mauka" and "Koko Head" are directional terms used in Hawai'i. "Mauka" is a Hawaiian word meaning "[i]nland, upland, towards the mountain[.]" Mary Kawena Pukui & Samuel H. Elbert, Hawaiian Dictionary 242, 365 (rev. ed. 1986). "Koko Head" is the modern name for a well-known volcanic tuff cone on the eastern side of O'ahu, see Mary Kawena Pukui, Samuel H. Elbert & Ester T. Mookini, Place Names of Hawaii 115 (rev. and enlarged ed. 1974), and is used to refer to an easterly direction from certain areas on O'ahu.

Officer Cobb-Adams placed McGrail under arrest for OUVII. Officer Cobb-Adams read and explained the "Use of Intoxicants While Operating a Vehicle Implied Consent for Testing" form and the "Notice of Administrative Revocation" form to McGrail. McGrail agreed to take a breath test, which was performed by HPD Officer Miya Brouwer (Officer Brouwer). The test showed that McGrail had 0.259 grams of alcohol per 210 liters of breath. McGrail was served with the "Notice of Administrative Revocation."

II.

As part of the administrative revocation process, the police reports prepared by Officer Cobb-Adams, Officer McGuire, and Officer Yoshii were submitted to the Administrative Director of the Courts, State of Hawai'i (Director). Officer Cobb-Adams and Officer Yoshiki each swore that the information contained in their respective police reports was true and correct.[2] Officer McGuire did not swear that the information contained in her report was true and correct. Officer Brouwer, the Intoxilyzer operator who conduced McGrail's breath test, and Tracy J. Morita, the person responsible for maintaining the Intoxilyzer equipment used for McGrail's test, also submitted sworn statements to the Director.

The Director, through the Administrative Driver's License Revocation Office (ADLRO), conducted an administrative review of the issuance of the notice of administrative revocation. Based on the preponderance of the evidence considered, the Director determined that (1) McGrail's alcohol concentration was .08 or more; (2) there existed reasonable suspicion to stop McGrail's vehicle; (3) there existed probable cause to believe that McGrail operated the vehicle while under the influence of an intoxicant; (4) the evidence proved by the

---

[2] HPD Officer Dominic Madamba, who responded to the scene and moved McGrail's car, also prepared a police report that was submitted to the Director, which the officer swore contained information that was true and correct.

4

preponderance that McGrail operated the vehicle while under the influence of an intoxicant; and (5) McGrail was a highly intoxicated driver. The Director issued an administrative review decision which revoked McGrail's driver's license for six months.

McGrail requested a hearing on the administrative review decision. McGrail initially requested subpoenas for Officer Cobb-Adams, Officer McGuire, and Officer Brouwer, but the ADLRO only issued subpoenas for Officers Cobb-Adams and Brouwer. At the first hearing, McGrail waived the testimony of Officers Cobb-Adams and Brower. The ADLRO hearing officer then granted McGrail's renewed request to subpoena Officer McGuire and the hearing was continued to secure her presence. The hearing was continued twice more, once because McGrail failed to submit the documents necessary to subpoena Officer McGuire and the second time because Officer McGuire called in sick after being subpoenaed. McGrail did not subpoena Officer McGuire for the rescheduled hearing, and McGrail informed the hearing officer that he was not requesting a further continuance to secure Officer McGuire's presence.

At the rescheduled hearing, McGrail moved to strike Officer McGuire's unsworn police report. McGrail also moved to strike Officer McGuire's unsworn statements to Officer Cobb-Adams regarding Officer McGuire's basis for stopping McGrail's vehicle, which were included in Officer Cobb-Adams's sworn police report. The hearing officer took McGrail's motions under advisement. The hearing officer subsequently granted McGrail's motion to strike Officer McGuire's police report because it was an unsworn statement. The hearing officer, however, denied McGrail's motion to strike Officer McGuire's statements to Officer Cobb-Adams that were included in Officer Cobb-Adams's sworn police report.

Based on Officer McGuire's unsworn statements in Officer Cobb-Adams's sworn police report, the hearing officer found and concluded that Officer McGuire had reasonable suspicion to stop McGrail's vehicle. The hearing officer made additional

5

findings which led to his conclusions that (1) there was probable cause to believe that McGrail operated a vehicle while under the influence of an intoxicant; (2) the evidence demonstrated, by a preponderance, that McGrail operated a vehicle while under the influence of an intoxicant; and (3) McGrail was a highly intoxicated driver due to his breath test result of .259 grams of alcohol per 210 liters of breath. The hearing officer ruled that McGrail's elevated breath test result was an aggravating factor that warranted an increase in McGrail's revocation period. The hearing officer therefore increased the period of McGrail's revocation from six months to eight months.

III.

McGrail filed a petition for judicial review of the hearing officer's decision. The District Court of the First Circuit (District Court)[3] affirmed the hearing officer's decision, and it issued its "Decision and Order Affirming Administrative Revocation" (Decision and Order) and its "Judgment on Appeal" (Judgment) on April 19, 2010. This appeal followed.

DISCUSSION

On appeal to this court, McGrail argues that: (1) the hearing officer erred when he considered Officer McGuire's unsworn statements contained in Officer Cobb-Adams's sworn police report to find reasonable suspicion for the traffic stop of McGrail's vehicle; and (2) the hearing officer violated McGrail's due process rights by increasing the period of his revocation by two months over the period imposed in the administrative review decision, where no additional or different evidence was presented to the hearing officer.

As set forth below, we agree with McGrail that the hearing officer erred in considering Officer McGuire's unswowrn statements that were contained in Officer Cobb-Adams's sworn police report. We therefore reverse the District Court's Judgment, which affirmed the administrative revocation of

_____

[3] The Honorable William A. Cardwell presided.

McGrail's driver's license.  In light of our resolution of McGrail's first point of error, we need not address the due process claim he raises in his second point of error.

I.

We review the District Court's decision to affirm the Director's administrative revocation of McGrail's driver's license to determine if the District Court was right or wrong in its decision.  Brune v. Admin. Dir. of the Courts, 110 Hawai'i 172, 176-177, 130 P.3d 1037, 1041-42 (2006).  The District Court's review of the Director's decision is limited to the record of the administrative hearing and the issues of whether the Director:

(1)    Exceeded constitutional or statutory authority;

(2)    Erroneously interpreted the law;

(3)    Acted in an arbitrary or capricious manner;

(4)    Committed an abuse of discretion; or

(5)    Made a determination that was unsupported by the evidence in the record.

HRS § 291E-40(c) (2007).

II.

McGrail requested an administrative hearing pursuant to HRS § 291E-38 (2007) to challenge the initial administrative review decision to revoke his driver's license.  HRS § 291E-38(e) provides, in relevant part, that upon conducting the administrative hearing:

(e) The [D]irector shall affirm the administrative revocation only if the [D]irector determines that:

(1)    There existed reasonable suspicion to stop the vehicle . . . ;

(2)    There existed probable cause to believe that the respondent operated the vehicle while under the influence of an intoxicant; and

(3)    The evidence proves by a preponderance that:

(A)    The respondent operated the vehicle while under the influence of an intoxicant[.]

7

Based on the record, it appears that Officer McGuire was solely responsible for the decision to stop McGrail's car. Officer McGuire was the only officer who had observed McGrail's alleged unsafe and erratic driving, which was the asserted basis for the stop, and Officer McGuire was the officer who effected the traffic stop. The other police officers, including Officer Cobb-Adams, arrived at the scene after McGrail had already been stopped.

The hearing officer struck Officer McGuire's unsworn police report, in which she recited her observations of McGrail's driving which led her to stop his car, because it was an unsworn statement. The only other evidence before the hearing officer regarding the basis for the traffic stop was Officer McGuire's unsworn statements to Officer Cobb-Adams that were included in Officer Cobb-Adams's sworn police report. Therefore, the validity of the hearing officer's determination that there was reasonable suspicion to stop McGrail's car turns on whether the hearing officer could properly consider Officer McGuire's statements that were included in Officer Cobb-Adams's police report.[4]

McGrail argues that the hearing officer erred in considering Officer McGuire's unsworn statements contained in Officer Cobb-Adams's sworn police report. As McGrail acknowledged to the hearing officer, hearsay is generally admissible at administrative hearings. See Price v. Zoning Bd. of Appeals, 77 Hawai'i 168, 176 & n.8, 883 P.2d 629, 637 & n.8 (1994). However, McGrail argues that given the particular statutory scheme for administrative driver's license revocations set forth in HRS Chapter 291E, Part III, and the emphasis placed by that scheme on sworn statements, the hearing officer should not have considered Officer McGuire's unsworn statements in

---

[4] McGrail does not dispute that if the hearing officer could properly consider Officer McGuire's statements in Officer Cobb-Adams's police report in determining whether there was reasonable suspicion for the stop, then there was sufficient evidence to support the hearing officer's determination.

Officer Cobb-Adams's sworn police report to find reasonable suspicion for the stop.

We conclude that the statutory scheme reveals the Hawai'i Legislature's intent that sworn statements be submitted by police and other government officers playing crucial roles in the administrative revocation process. It also reveals the importance the Legislature placed on sworn statements by such officers as a means of ensuring the reliability of their statements and the evidence used in the administrative revocation process. Given the statutory scheme, we conclude that the hearing officer erred in considering Officer McGuire's unsworn statements contained in Officer Cobb-Adams's sworn police report to find reasonable suspicion for the stop of McGrail's vehicle.

### III.

We begin by examining the legislative intent underlying the enactment of HRS Chapter 291E, Part III, which establishes the administrative revocation process. In establishing this process, the Legislature emphasized the importance of sworn statements by requiring them for police and government officers playing key roles in the revocation process.

For example, for drivers like McGrail who are arrested for alcohol-related OVUII and submit to an alcohol concentration test, the administrative revocation process is triggered by the respondent-driver's arrest[5] and a test establishing that the respondent's alcohol concentration was .08 or more. HRS § 291E-36(a) (2007).[6] When this occurs, HRS § 291E-36(a) requires that

---

[5] In the administrative revocation proceedings, the person arrested for OVUII and/or to whom a notice of administrative revocation has been issued is referred to as the "respondent." That person becomes the "petitioner" when he or she seeks judicial review of the Director's post-hearing decision to revoke the person's license. Thus, McGrail was the "respondent" during his administrative revocation proceedings and became the "petitioner" when he sought judicial review of the Director's decision in the District Court.

[6] We cite to the provisions of HRS Chapter 291E, Part III, that were in effect at the time relevant to McGrail's case. HRS §§ 291E-36 (2007) and HRS § 291E-37(a) (2007) were subsequently amended effective July 1, 2012, in ways not relevant to this appeal. 2012 Haw. Sess. Laws Act 327, §§ 13, 14, and 27
(continued...)

sworn statements of the arresting officer, the person responsible for maintenance of the testing equipment, and the person who conducted the test be submitted immediately to the Director for the initial administrative review.  HRS § 291E-36(a) provides in relevant part:

> **§ 291E-36  Documents required to be submitted for administrative review; sworn statements.**  (a) Whenever a respondent has been arrested for a violation of section 291E-61 or 291E-61.5 and submits to a test that establishes: the respondent's alcohol concentration was .08 or more . . . , the following shall be forwarded immediately to the [D]irector:
>
> > (1)  A copy of the arrest report . . . <u>and the sworn statement of the arresting law enforcement officer</u> . . . , stating facts that establish that:
> >
> > > (A)  There was reasonable suspicion to stop the vehicle . . . ;
> > >
> > > (B)  There was probable cause to believe that the respondent had been operating the vehicle while under the influence of an intoxicant; and
> > >
> > > (C)  The respondent agreed to be tested . . . ;
> >
> > (2)  In a case involving an alcohol related offense, <u>the sworn statement of the person responsible for maintenance of the testing equipment,</u> stating facts that establish that, pursuant to section 321-161 and rules adopted thereunder:
> >
> > > (A)  The equipment used to conduct the test was approved for use as an alcohol testing device in this State;
> > >
> > > (B)  The person had been trained and at the time the test was conducted was certified and capable of maintaining the testing equipment; and
> > >
> > > (C)  The testing equipment used had been properly maintained and was in good working condition when the test was conducted;

---

[6/] (...continued)
at 1099, 1108.  HRS § 291E-38(h) (2007) was renumbered as HRS § 291E-38(g) effective July 1, 2012, but the text of the provision did not change.  2012 Haw. Sess. Laws Act 327, §§ 15, 27 at 1102-03, 1108.

(3)     In a case involving an alcohol related offense, <u>the sworn statement of the person who conducted the test</u>, stating facts that establish that, pursuant to section 321-161 and rules adopted thereunder:

    (A)     The person was trained and at the time the test was conducted was certified and capable of operating the testing equipment;

    (B)     The person followed the procedures established for conducting the test;

    (C)     The equipment used to conduct the test functioned in accordance with operating procedures and indicated that the respondent's alcohol concentration was at, or above, the prohibited level; and

    (D)     The person whose breath or blood was tested is the respondent[.]

(Emphases added.)

The Director, through an ADLRO review officer, automatically reviews the issuance of the notice of administrative revocation.  HRS § 291E-37(a) (2007).  In conducting this administrative review, the Director "shall consider," among other things, "[t]he sworn statement of any law enforcement officer or other person or other evidence or information required by section 291E-36."  HRS § 291E-37(c)(3) (2007).

If the Director revokes the respondent's license at the administrative review level, the respondent-driver is entitled to request and obtain an administrative hearing before an ADLRO hearing officer.  HRS § 291E-38(a) (2007).  At the hearing, the hearing officer must admit into evidence and consider the sworn statements required by HRS § 291E-36.  HRS § 291E-38(h) (2007) provides in relevant part: "The sworn statements provided in section 291E-36 shall be admitted into evidence.  The [D]irector shall consider the sworn statements in the absence of the law enforcement officer or other person."  In addition, the respondent-driver is entitled to have the Director issue a subpoena to require the appearance at the hearing of any "law

11

enforcement officer or other person who made a sworn statement" whom the respondent-driver wishes to examine. Id.

IV.

In enacting the statutory scheme, the Legislature chose to require the submission of sworn statements by key police and government officers as a means of ensuring the reliability of the revocation process. At the administrative review level, the Director makes the initial revocation decision based purely on documentary evidence. For cases like McGrail's, the Legislature mandated the submission of the sworn statements of the arresting law enforcement officer, the person responsible for maintenance of the testing equipment, and the person who conducted the test, and the Legislature further required that the Director consider such sworn statements in the initial administrative review. HRS § 291E-36(a). At the administrative hearing level, the Legislature mandated that the sworn statements required for the administrative review "shall be admitted into evidence" at the hearing. HRS § 291E-38(h). The Legislature also gave the respondent-driver the right to subpoena any officer or other person who made a sworn statement whom the respondent wishes to examine at the hearing. Id.

The Hawai'i Supreme Court and this court have also recognized the importance placed on sworn statements in the statutory scheme by generally precluding the hearing officer from considering unsworn statements of law enforcement officers who do not appear to testify. In Desmond v. Admin. Dir. of the Courts, 91 Hawai'i 212, 982 P.2d 346 (App. 1998) (Desmond I), this court concluded that:

> Based on HRS §§ 286-257, -258, and -259 [(the predecessors of HRS §§ 291E-36, -37, and -38)], . . . upon the [respondent-driver's] objection, the Hearing Officer must exclude from the record only the following: (a) all unsworn statements (except the arrest report) of law enforcement officials who do not appear to testify; and (b) all other evidence that is both irrelevant and prejudicial.

Desmond I, 91 Hawai'i at 220, 982 P.2d at 354 (emphasis added), rev'd on other grounds, 90 Hawai'i 301, 978 P.2d 739 (1999)

12

(Desmond II).  The Hawai'i Supreme Court in Desmond II held that this court's above-quoted conclusion was correct.  Desmond II, 90 Hawai'i at 301-02, 978 P.2d at 739-40.

Given the importance placed on sworn statements to ensure reliability under the statutory scheme, as recognized by Hawai'i precedents, we conclude that the hearing officer erred in considering the unsworn statements of the Stopping Officer that were included in the Arresting Officer's sworn police report to determine that there was reasonable suspicion to stop McGrail's car.  We hold that where, as in this case, the Arresting Officer played no role in, and had no influence on, the decision to stop the vehicle, the hearing officer cannot consider the unsworn statements of the Stopping Officer in determining whether there was reasonable suspicion for the stop simply because the Stopping Officer's unsworn statements were included in the sworn police-report statement of the Arresting Officer.  To permit the hearing officer to consider the Stopping Officer's unsworn statements under the circumstances of this case would conflict with the Legislature's reliance on the sworn statements of key police and government officials as a means of ensuring the reliability of the revocation process.  It would also conflict with the requirement under Desmond I and Desmond II that the hearing officer exclude unsworn statements of non-testifying police officers where the respondent-driver objects.

The sworn statements that must be submitted under HRS § 291E-36 (2007) involve police and government officers playing key roles and making crucial decisions that affect the revocation process.  These are individuals that typically provide information that is directly relevant to the determinations the Director must make in order to revoke a respondent's driver's license in a case like McGrail's, namely, that (1) there existed reasonable suspicion to stop the vehicle; (2) there existed probable cause to believe that the respondent operated the vehicle while under the influence of an intoxicant; and (3) the

13

preponderance of the evidence shows that the respondent operated the vehicle while under the influence of an intoxicant. HRS §§ 291E-36(a) and 291E-38(e). Although the arresting law enforcement officer, who must submit a sworn statement, may often be the stopping police officer, HRS § 291E-36 does not specifically require a sworn statement by the stopping police officer. Nevertheless, in light of the importance placed on sworn statements as a means of ensuring reliability under the statutory scheme, we conclude that it would be incongruous under the circumstances of this case to permit the hearing officer to consider the unsworn statements of the non-testifying Stopping Officer to determine whether reasonable suspicion existed to stop McGrail's vehicle.

Because of the emphasis placed on sworn statements under the statutory scheme, we stated in our opinion in Desmond I that "[t]he job of the Administrative Driver's License Revocation Office would be simpler if all statements of every law enforcement official were worded as sworn statements." Desmond I 91 Hawai'i at 219 n.4, 982 P.2d at 353 n.4. At oral argument, the Director conceded that the Stopping Officer could have without any difficulty submitted a sworn statement in this case. Indeed, other police officers besides the Arresting Officer submitted sworn police reports in this case. Therefore, it does not appear that requiring an officer in the position of the Stopping Officer to submit a sworn police report would impose a significant burden on the government.

V.

In opposing McGrail's arguments, the Director notes that McGrail was given the opportunity to subpoena the Stopping Officer but ultimately declined that opportunity. However, the administrative revocation process places the burden on the government to establish a prima facie case for revocation, including that reasonable suspicion existed to stop the respondent's vehicle, before the respondent has any burden to

14

present evidence. See Kernan v. Tanaka, 75 Haw. 1, 30, 856 P.2d 1207, 1222 (1993). Here, the government did not establish a prima facie case for revocation because the hearing officer could not properly consider the Stopping Officer's unsworn statements contained in the Arresting Officer's sworn police report. Therefore, whether McGrail had the opportunity to subpoena the Stopping Officer is of no consequence because the burden to present evidence never shifted to McGrail.

The Director also argues that the hearing officer properly considered the Stopping Officer's unsworn statements contained in the Arresting Officer's sworn police report because hearsay is generally admissible in administrative proceedings and because police officers may rely on hearsay in determining reasonable suspicion. The Director's hearsay arguments are unpersuasive.

First, our decision does not depend on whether hearsay is admissible in administrative proceedings. Rather, it is based on the specific importance the Legislature placed on sworn statements as a means of ensuring reliability in the particular administrative revocation process at issue in this appeal. Indeed, a sworn statement itself is hearsay, and thus our decision does not turn on whether hearsay is generally admissible in administrative proceedings.

The ability of police officers to rely on hearsay information in determining reasonable suspicion also does not detract from our analysis.[1/] The focus of the reasonable suspicion determination is still on what the officer who effected the traffic stop knew and believed at the time of the stop. See State v. Bohannon, 102 Hawai'i 228, 237, 74 P.3d 980, 989 (2003)

---

[1/] In Adams v. Williams, 407 U.S. 143, 147 (1972), the United States Supreme Court rejected the argument that reasonable cause for a stop and frisk can only be based on the officer's personal observations. Similarly, in State v. Prendergast, 103 Hawai'i 451, 460-61, 83 P.3d 714, 723-24 (2004), the Hawai'i Supreme Court held that, under appropriate circumstances, an anonymous tip could provide reasonable suspicion to justify an investigatory stop of a vehicle.

("To justify an investigative stop . . . 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" (block quote format and citation omitted)).  Here, the Stopping Officer, who was solely responsible for making the decision to stop McGrail's car, did not submit a sworn statement attesting to her basis for the stop and did not testify at the administrative hearing.  There is no conflict between the Legislature's intent that a sworn statement be used as a means of ensuring reliability and the ability of a police officer to rely on hearsay information in determining reasonable suspicion.  Accordingly, an officer's ability to rely on hearsay information does not undermine our conclusion that the hearing officer erred in considering the Stopping Officer's unsworn statements in finding that the Stopping Officer had reasonable suspicion to stop McGrail's car.

CONCLUSION

Based on the foregoing, we reverse the District Court's Judgment.

Jonathan Burge
for Petitioner-Appellant

Girard D. Lau
Deputy Attorney General
Department of the Attorney
    General
for Respondent-Appellee

*Craig H. Nakamura*

*Lawrence M. Reifurth*

16