**\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\***

**Electronically Filed
Supreme Court
SCWC-21-0000679
20-AUG-2024
09:23 AM
Dkt. 17 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

CHARLES TUNG MING YUEN,
Petitioner/Defendant-Appellant.

SCWC-21-0000679

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-21-0000679; CASE NO. 1DTA-18-03510]

AUGUST 20, 2024

McKENNA, EDDINS, AND DEVENS, JJ.,
AND RECKTENWALD, C.J., DISSENTING, WITH WHOM GINOZA, J., JOINS

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction and Summary

This case arises out of a motor vehicle collision ("MVC") that occurred in the City & County of Honolulu ("City"), 50 feet from the entrance to the O'Malley Gate of Hickam Air Force Base ("HAFB").  As he approached the gate, defendant Charles Yuen ("Yuen") allegedly rear-ended and caused significant bumper

damage to another car. Yuen's car apparently had no visible damage.

Military police or personnel ("MPs") apparently came to the scene just outside the military base and identified Yuen as the responsible driver. They apparently then seized Yuen and subjected him to a preliminary screening to see if he was intoxicated, including standard field sobriety tests ("SFSTs") and/or a preliminary alcohol screening ("PAS"). It appears they then called the Honolulu Police Department ("HPD") to report a MVC and a "DUI at the gate" and detained Yuen until HPD arrived. At some point, HPD officers responded and the MPs identified Yuen as the driver to HPD. HPD then administered their own SFSTs and PAS. Thereafter, Yuen was arrested and charged with OVUII in violation of Hawai'i Revised Statutes ("HRS") § 291E-61(a)(1) (2007).[1]

---

[1] HRS § 291E-61(a)(1) provides:

> (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

> (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty. . . .

Yuen was also charged with Inattention to Driving under HRS § 291-12 (2007 & Supps. 2008 & 2016). The district court dismissed this charge indicating "insufficient facts were established at trial to meet the elements of that charge."

As trial was starting, Yuen's trial counsel sought to exclude evidence from the MPs based on the Posse Comitatus Act ("PCA"), 18 U.S.C. § 1385 (1994).  The PCA generally prohibits use of the military to conduct civilian law enforcement activities.  In State v. Pattioay, 78 Hawai'i 455, 896 P.2d 911 (1995), we held that evidence obtained in violation of the PCA must be suppressed.  78 Hawai'i at 468-69, 896 P.2d at 924-25.  In addition, the "fruit of the poisonous tree" doctrine requires exclusion of evidence obtained as a result of an illegal seizure or search.  State v. Weldon, 144 Hawai'i 522, 534, 445 P.3d 103, 115 (2019) (illegal seizure); State v. Knight, 63 Haw. 90, 93, 621 P.2d 370, 374 (1980) (per curiam) (illegal search); see also, State v. Won, 137 Hawai'i 330, 338, 372 P.3d 1065, 1073 (2015) (holding that a breath test is a search subject to the constitutional constraints of Article I, Section 7 of the Hawai'i Constitution).

Yuen's trial counsel did not, however, file a motion to or orally move to suppress all evidence against Yuen based on an alleged PCA violation.  If a motion to suppress had been made, more evidence could have been developed.  The MPs could have been subpoenaed to testify.  Yuen himself would have been able to testify regarding the actions and statements of the MPs without waiving his right against self-incrimination; his

3

testimony also could not have been used against him at trial. State v. Chang, 144 Hawai'i 535, 545, 445 P.3d 116, 126 (2019).

Even without a motion to suppress, the District Court of the First Circuit of the State of Hawai'i ("district court" or "court")[2] recognized and expressed concerns based on the PCA. The district court generally excluded or sua sponte struck most of the evidence regarding the MPs' actions and statements.

Testimony was received, however, from the State's three HPD trial witnesses. They testified they were called to respond to the scene of an MVC and "DUI at the gate." Upon HPD's arrival, Yuen was initially sitting in the rear vehicle. Based on signs of intoxication, an HPD officer administered SFSTs and Yuen was arrested. Yuen called no witnesses. The district court adjudicated Yuen guilty of OVUII.

The Intermediate Court of Appeals ("ICA") affirmed. Relevant here, the ICA deemed the record insufficient to establish ineffective assistance of counsel based on trial counsel's failure to file a motion to suppress based on the PCA. The ICA further determined there was substantial evidence to support Yuen's conviction.

On certiorari, Yuen asserts the ICA erred: (1) by not holding Yuen's trial counsel ineffective for failing to file a

---

[2]     The Honorable John A. Montalbano presided.

motion to suppress based on Yuen's right against unreasonable searches and seizures under Article I, Section 7 of the Hawai'i Constitution in correlation with the PCA violation; and (2) by holding there was substantial evidence to support Yuen's conviction.

We hold Yuen's trial counsel's failure to file a motion to suppress constituted ineffective assistance but that there was substantial evidence to support Yuen's conviction.

"Ineffective assistance of counsel" exists when (1) there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and (2) such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. To satisfy the second prong, the defendant only needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense; a defendant need not prove actual prejudice. State v. Wakisaka, 102 Hawai'i 504, 514, 78 P.3d 317, 327 (2003) (cleaned up). In some cases, the ineffective assistance of counsel may be so obvious from the record that a Hawai'i Rules of Penal Procedure ("HRPP") Rule 40 (eff. 2006) post-conviction proceeding, through which a conviction can also be set aside based on ineffective assistance of counsel, serves no purpose except to delay the inevitable and expend resources

unnecessarily.  State v. Silva, 75 Hawai'i 419, 438-39, 864 P.2d 583, 592 (1993).

In this case, trial counsel's ineffective assistance of counsel is obvious from the record.  Although defense counsel orally expressed concerns regarding the admission of evidence from the MPs regarding their alleged seizure, investigation, and search of Yuen, he did not file a motion to suppress to establish a PCA violation and ban its alleged "fruit," the testimony of HPD officers which allegedly followed the alleged illegal seizure and/or search by the MPs.  Ineffective assistance only requires possible impairment of a potentially meritorious defense.  If a motion had been filed, additional evidence could have been adduced regarding a possible PCA violation by the MPs.  If a PCA violation had been established, evidence obtained as its fruit could have been subject to suppression.  Hence, trial counsel's failure to file a motion to suppress constituted ineffective assistance.  We therefore disagree with the ICA that the record was insufficiently developed to establish ineffective assistance.

Because we vacate the conviction and remand based on the first issue on certiorari, we must also address the second issue alleging insufficient evidence.  See State v. Davis, 133 Hawai'i 102, 120, 324 P.3d 912, 930 (2014) (holding that the double

6

jeopardy clause of Article I, Section 10 of the Hawai'i Constitution requires an appellate court to address a defendant's express claim of insufficiency of the evidence before remanding). On this issue, we agree with the ICA that there was substantial evidence to support Yuen's conviction. Therefore, Yuen is not entitled to a dismissal of the OVUII charge on appeal.

Hence, we vacate Yuen's OVUII conviction and remand to the district court for further proceedings consistent with this opinion.

## II. Background

### A. Factual background

On October 25, 2018, a MVC occurred in an area approximately 50 feet in front of the north O'Malley Gate of HAFB in the City and County of Honolulu, Hawai'i. The collision involved two vehicles.

As no motion to suppress based on the alleged PCA violation was filed, the record does not contain sworn testimony regarding what happened before HPD arrived and the details of the interaction the MPs had with Yuen. The factual background provided regarding the time period before HPD's arrival is therefore based on representations on the record from the State's deputy prosecuting attorney and Yuen's trial attorney.

The MVC had occurred as the vehicles were approaching military property. MPs then came out to the scene outside the military base. They identified Yuen as the Unit 1 (rear) vehicle driver. MPs then apparently seized Yuen and subjected him to SFSTs. They apparently did so without <u>Miranda</u> warnings regarding the medical rule-out questions.[3] MPs also apparently administered a PAS test on Yuen. The MPs apparently then continued Yuen's seizure and called HPD to report a MVC and "a possible DUI outside the gate."

The MVC occurred and the MPs apparently seized Yuen on City, not military, property. According to HPD officers, they were called to respond to a MVC and possible DUI. Upon arrival, Yuen was the sole passenger seated in the Unit 1 (rear) vehicle. An adult male was identified as the driver of the Unit 2 (front) vehicle, which also contained two children ages eleven and two years old.

After observing symptoms of intoxication, an HPD officer conducted SFSTs on Yuen. After the tests, Yuen was arrested for OVUII.

---

[3] In <u>State v. Skapinok</u>, 151 Hawai'i 170, 510 P.3d 599 (2022), we held that medical rule-out questions are "interrogation" when a defendant is in custody. It appears a motion to suppress might also have developed further evidence regarding the "custody" issue based on what the MP said to Yuen. According to Yuen's trial counsel, the MPs had taken Yuen "in custody."

**B.    District court proceedings**

On October 26, 2018, the State filed a complaint charging Yuen with OVUII.  The court conducted Yuen's trial on October 8, 2019 and December 11, 2019.

**1.    Pre-trial issues**

Before trial, Yuen's trial counsel[4] raised concerns about the admissibility of State evidence based on the PCA.  Trial counsel anticipated that, during trial, the State would call the MPs who detained Yuen and conducted their own SFSTs and PAS before HPD officers arrived.  Trial counsel asserted the court should determine the admissibility of the evidence regarding the MPs.

The State responded that the only evidence from the MPs it intended to proffer was their identification of Yuen as the driver of the vehicle.[5]  After confirming the State would not be proffering evidence of the MPs' SFSTs or statements incriminating Yuen, the district court commenced trial.

---

[4]    Yuen was represented at trial by attorney Barry Sooalo.

[5]    The State did not end up calling any of the MPs because it was apparently unable to "secure" them as witnesses.  It is unclear whether they were subpoenaed for the second trial date.  But it is clear the State did not subpoena them for the first day of trial.

## 2. Officer Peter's testimony

The State's first witness was Officer Jody Peter, who prepared the MVC report.  On direct examination, Officer Peter testified as follows.

In the evening of October 25, 2018, she was sent to the scene of a MVC approximately 50 feet north of the gate going into HAFB.  Upon her arrival at the scene, Yuen was sitting in the rear vehicle.  The vehicle in front had an adult male and two children.

> A. When I arrived on scene, I observed two vehicles in the front of me already in a parked position.  The two vehicles were the ones that were involved in the motor vehicle collision.  I was -- I was approached by military personnel and he stated that there was a motor vehicle collision and that they –- he already identified who the driver of Unit 1 vehicle was.
> Q. Okay. And who did he identify as the Unit 1 driver?
> A. Charles Yuen
> Q. Okay. And when you approached the vehicles, were there -- was the driver in the vehicle?
> A. He [Yuen] was sitt[ing] in -- in the vehicle at the time.

The district court sua sponte expressed concerns that the testimony regarding what the MP[6] told her about Yuen being the responsible driver violated the PCA and struck that testimony.

Officer Peter noticed damage to the rear of the bumper of car in front:  "the rear of the bumper was smashed, was bent in."  While she was preparing the MVC report, she saw Yuen

---

[6]    Officer Laganse's later testimony referred to the "military personnel" as MPs.

standing around.  She smelled alcohol on Yuen's breath and observed him swaying, but he was otherwise cooperative with HPD officers.

On cross-examination, Officer Peter testified she was certain that the physical area of her investigation was City and not military property.

### 3.  Officer Laganse's testimony

The State's next witness was Officer Jennifer Laganse, the officer who administered the SFSTs[7] and made the arrest.  She testified that HPD responded because MPs said they had a DUI at the gate; upon objection from Yuen's trial counsel, the court struck this initial testimony.  But Officer Laganse later testified on cross-examination that she had been apprised Yuen was the driver and that she had been instructed to conduct SFSTs.  She also testified that she had been apprised it might be a possible DUI and that she was then instructed to do the SFST to determine that.[8]

_____

[7]    At the December 11, 2019 trial continuance, the court indicated it would not consider testimony by Officer Laganse as an expert regarding Yuen's possible intoxication, the HGN test, and her conclusions of law relating to Yuen's possible intoxication.  However, the court considered Officer Laganse's testimony as a layperson, admitting her observations of Yuen during the SFSTs and interactions with him during the MVC investigation.  This trial took place before State v. Jones, 148 Hawai'i 152, 468 P.3d 166 (2020) (prospectively holding that for trials occurring after June 30, 2020, police officers may no longer testify, whether in a lay or expert capacity, that a driver appeared "intoxicated").  148 Hawai'i at 176, 468 P.3d at 190.

[8]    Who said what could have been clarified in a motion to suppress.

Officer Laganse also testified as follows:

> Q. Okay. And when you arrived, where were the vehicles that you were called to investigate?
> A. They were in the left-most lane, parked to the side.
> Q. And is this prior to the Hickam gate?
> A. Yes, prior to the Hickam gate. Yes, ma'am.
> Q. Is that area open to the general public --
> A. Yes, ma'am.
> Q. -- at all times? Okay. Is it a public way, street, road, or highway?
> A. Yes, ma'am.
> Q. And in the City and County of Honolulu, [S]tate of Hawaii [Hawai'i]?
> A. Yes, ma'am.
> Q. Okay. When you arrived on scene, did you make any observations initially?
> A. I did observe the two vehicles with their hazard lights on.
> . . . .
> Q. Okay. Did you make any observations of Mr. Yuen?
> A. When I was speaking to Mr. Yuen, his -- his eyes appeared to be red and watery and -- well, as he continued to speak to me, I could smell alcohol coming from his breath. . . . When I was initially talking with him, at one point when he was off to the side, he kind of fell into the bushes.
> Q. Is there anything that may have caused him to fall into the bushes?
> A. No. And -- and then Mr. Yuen was also slurring some of his words when he was talking to me.
> Q. So based on these observations, did you perform a standardized field sobriety test on the defendant?
> A. Yes, I did, ma'am.

When she began to administer a SFST on Yuen, she noticed "an alcoholic-type beverage" odor when Yuen was speaking to her. When she conducted the walk and turn test, Yuen missed steps and failed to follow instructions. Yuen was also unable to maintain his balance in a position of instruction.[9] Yuen was swaying and could not keep his balance during the one-leg stand test.

---

[9] The "position of instruction" is where one stands with the "right foot in front of left, heel to toe, arms at [one's] side."

> [He] actually put his foot down [a] couple times, and then
> he would sway left and right.  And I had to instruct him
> multiple times, actually, to look down at his foot during
> the test, because he had to count.  He'd count, but look --
> be looking upward, which actually helps the person maintain
> their balance.  So I instructed him two times to look down
> at his foot and continue counting.  And when he did look
> down, I noticed that he would hop to maintain the balance.

Yuen had "red, watery eyes[,] slurring words[,] and alcohol emitting from his breath."

On cross-examination, Officer Laganse testified that after arriving at the scene, she was apprised by Officer Peter about what happened, and that Officer Peter identified Yuen as the driver.

**4.    Officer Tablit's testimony**

As its last witness, the State called Officer Marie Tablit, the officer instructed to administer the PAS test[10] and transport Yuen to the station.  Upon arriving at the scene, Officer Tablit observed that Yuen had "glassy, watery eyes."  Officer Tablit made no further observations of Yuen during transport.

After Officer Tablit's testimony, the court continued trial until December 11, 2019.

---

[10]     The court struck Officer Tablit's testimony regarding the result of the PAS test for lack of foundation.

### 5.    December 11, 2019 trial continuance

At the December 11, 2019 trial continuance, the State rested its case.  Yuen then moved for a judgment of acquittal. The court denied the motion.  Yuen did not call any witnesses.

After closing arguments, the district court adjudicated Yuen guilty of OVUII based on the testimony of the HPD officers. The district court imposed fines and fees and ordered Yuen to attend a substance abuse and rehabilitation program.[11]

### C.    ICA proceedings

### 1.    Yuen's opening brief

On April 5, 2022, Yuen's new counsel filed an appeal of the district court's judgment with the ICA.  In relevant part, Yuen raised the following issues:  (1) Yuen's trial counsel provided ineffective assistance of counsel because he failed to file a motion to suppress based on a violation of the PCA, the Fourth Amendment of the U.S. Constitution, and/or Article I, Section 7 of the Hawai'i Constitution; and (2) there was insufficient evidence to establish Yuen's guilt beyond a reasonable doubt.[12]

Yuen first argued that his trial counsel was ineffective for failing to file a motion to suppress evidence.  The MPs were

---

[11]    The district court also ordered a restitution investigation.  On November 12, 2021, it conducted a hearing and did not order any restitution.

[12]    Yuen also raised issues no longer raised on certiorari.

14

within City jurisdiction while conducting their OVUII investigation. Because the HPD officers' investigation resulted from the MPs' initial seizure of Yuen, Yuen asserted the HPD investigation was "fruit of the poisonous tree" of the initial illegality.

Yuen also argued that his trial counsel was ineffective for failing to file a motion to suppress based upon a violation of the PCA. Yuen cited Pattioay.

Lastly, Yuen asserted substantial evidence did not exist to support his conviction because the State failed to prove he was the operator of the vehicle. No witnesses testified at trial they saw Yuen operating the rear vehicle. Yuen posited that his case is distinguishable from State v. Brown, 97 Hawai'i 323, 37 P.3d 572 (App. 2001). There, the ICA held "a person may be proven to be a driver based on reasonable inferences drawn from circumstantial evidence." 97 Hawai'i at 333, 37 P.3d at 582. Yuen asserted circumstantial evidence was nonexistent in his case. Yuen contended the officers only testified that he was in the Unit 1 vehicle, not that he was the driver. He additionally argued that the fact he provided his license and paperwork only confirmed he followed police directives, not that he was driving. Yuen argued there was insufficient evidence for his

conviction and asked the court to reverse his conviction and remand for a new trial.

### 2. State's answering brief

The State asserted Yuen's trial counsel was not ineffective for failing to file a motion to suppress. Citing Pattioay, 78 Hawai'i at 464, 896 P.2d at 920, the State argued that "the PCA prohibits military participation in activities designed to execute civilian laws," and the evidence adduced at trial only established that HPD responded to a request to respond to a MVC. The State also maintained the military cannot be expected to ignore a MVC that might potentially obstruct a major entrance to a military base.

The State also argued Yuen had the burden of establishing that the evidence was unlawfully secured, and his constitutional rights were violated by the challenged search and seizure. The State posited that even if the MPs conducted an OVUII investigation before HPD arrived, HPD conducted its own independent investigation, and Yuen was arrested based on the HPD officers' investigation. Furthermore, as none of the evidence from the MPs' investigation was used at trial, there was no basis to file a motion to suppress; Yuen's trial counsel was therefore not ineffective.

As to the sufficiency issue, the State contended there was sufficient evidence to support the district court's finding that Yuen drove his vehicle while intoxicated. Officer Peter had testified that Yuen was still sitting in his vehicle when she approached the scene. The State argued there was sufficient circumstantial evidence to support the district court's finding that Yuen had operated his vehicle while intoxicated.

### 3. Yuen's reply brief

In his reply brief, Yuen asserted that because the MPs went outside their jurisdiction to conduct the OVUII investigation, held Yuen until HPD officers arrived, and because Yuen was not a member of the military, the military officers' investigation was "only in furtherance of" the HPD investigation. Yuen argued that considering the factual scenario and trial counsel's awareness of the PCA, there was no reason for trial counsel not to seek suppression of all evidence based on a violation of the PCA. Furthermore, Yuen insisted that given the significant involvement of the MPs in Yuen's civilian investigation, the State was required to prove that the MPs had a purpose independent of their involvement with HPD's investigation in order to avoid a violation of the PCA, and without such proof, the evidence of HPD's investigation should have been suppressed because it was inextricably linked to the MPs' investigation.

17

As to his second argument, Yuen asserted that although Officer Peter testified that Yuen was sitting in his car, she did not testify he was seated in the driver's seat.  He additionally argued that the vehicles were already pulled over on the side of the road when Officer Peter arrived.  Yuen posited that without evidence about what seat he was in, or any other evidence that he had control of the vehicle, such as the possession of keys, the State failed to provide circumstantial evidence by which a reasonable inference could be made that Yuen was the driver.

### 4.   ICA's summary disposition order

On September 22, 2023, the ICA issued its summary disposition order.  State v. Yuen, No. CAAP-21-0000679, 2023 WL 6185286 (Haw. App. Sept. 22, 2023) (SDO).  The ICA noted that this court has acknowledged that "direct involvement of military personnel in civilian law enforcement is generally prohibited." Yuen, 2023 WL 6185286, at *2 (citing Pattioay, 78 Hawai'i at 460, 896 P.2d at 916).  The ICA indicated the Ninth Circuit has provided a three-part test to determine whether military involvement in civilian law enforcement is an exception to the PCA:  "[t]he involvement must not constitute the exercise of regulatory, proscriptive, or compulsory military power, must not amount to direct active involvement in the execution of the

18

laws, and must not pervade the activities of civilian authorities." Id. (citing United States v. Khan, 35 F.3d 426, 431 (9th Cir. 1994) (cleaned up)).

The ICA then discussed Pattioay. Yuen, 2023 WL 6185286, at *3. In Pattioay, a military police officer who acted as an undercover agent in the investigation, an army Criminal Investigation Department ("CID") special agent, and an HPD officer testified. Id. (citing 78 Hawai'i at 456-57, 896 P.2d at 912-13). The trial court had found there was no military function, and the matter was clearly within the scope of civilian law enforcement responsibility. Id. (citing Pattioay, 78 Hawai'i at 459, 896 P.2d at 915). On appeal, this court concluded the defendants met their burden of demonstrating the joint operation violated the PCA. Id. (citing Pattioay, 78 Hawai'i at 466, 896 P.2d at 922). Thus, suppression of the evidence was warranted.

The ICA noted that, here, the district court struck testimony that MPs informed HPD officers that Yuen was the driver of the Unit 1 vehicle out of concern of a potential PCA violation. Id. Furthermore, neither the State nor Yuen's attorney attempted to introduce the MPs' reported SFSTs or PAS into evidence. Id. The ICA concluded the record on appeal was therefore insufficient to establish a violation of the PCA. Id.

19

The ICA also indicated, however, that Yuen alleged facts which, if proven, might entitle him to relief and that his claims of ineffective assistance of counsel for failure to file a motion to suppress based on a violation of the PCA, the Fourth Amendment, and/or Article I, Section 7 were not patently frivolous and without trace of support in the record.  Id. Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(a) (eff. 2022) requires, however, that "[i]f a brief raises ineffective assistance of counsel as a point of error, the appellant shall serve a copy of the brief on the attorney alleged to have been ineffective."  Yuen, 2023 WL 6185286, at *4 n.5 (citing HRAP Rule 28(a) (2016)).  Because trial counsel had not been given a chance to respond to Yuen's ineffectiveness allegations, the ICA said it could not conclude that the failure to file a motion to suppress constituted an error or omission which resulted in the withdrawal of a potentially meritorious defense.  Yuen, 2023 WL 6185286, at *3.  Hence, instead of vacating Yuen's conviction based on ineffective assistance of counsel, the ICA affirmed it without prejudice to Yuen filing a HRPP Rule 40 petition so that a factual record could be developed.  Yuen, 2023 WL 6185286, at *4.

Lastly, the ICA considered whether there was substantial evidence that Yuen was the operator of the vehicle.  Id.  The

ICA noted, "A person can be proven to be the driver of a vehicle based on 'reasonable inferences drawn from circumstantial evidence.'" Id. (citing Brown, 97 Hawai'i at 333, 37 P.3d at 582). Officer Peter testified Yuen was the sole occupant of Unit 1, while there was a driver and two small children in Unit 2. Id. She also testified to damage to the rear bumper of Unit 2, but no damage to Unit 1. Id. Officer Laganse testified she interacted with Yuen and that Officer Peter identified Yuen as a driver. Id. The ICA concluded there was sufficient circumstantial evidence to support a finding that Yuen operated Unit 1. Id. Accordingly, the ICA affirmed the OVUII conviction without prejudice to Yuen filing a HRPP Rule 40 petition on his ineffective assistance of counsel claim. Id.

### D.    Certiorari proceedings

Yuen presents two questions on certiorari:

> 1. Whether the ICA gravely erred in holding that Yuen's trial counsel was not ineffective for failing to file a motion to suppress?

> 2. Whether the ICA gravely erred in holding that there was substantial evidence to support Yuen's conviction?

### III. Standards of Review

### A.    Constitutional issues

"Questions of constitutional law are reviewed under the right/wrong standard." State v. Borge, 152 Hawai'i 458, 464, 526 P.3d 435, 441 (2023) (citation omitted).

**B.    Ineffective assistance of counsel**

> When reviewing a claim of ineffective assistance of counsel, [the appellate court] looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases. The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test:  1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.  To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense.  A defendant need not prove actual prejudice.

Wakisaka, 102 Hawai'i at 513-14, 78 P.3d at 326-27 (internal quotation marks, citations, and footnote omitted).

**C.    Sufficiency of the evidence**

The appellate court reviews the sufficiency of evidence on appeal as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury.  The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (cleaned up).  "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."  Id. (cleaned up).

## IV. Discussion

## A. Ineffective assistance of counsel

### 1. Article I, Section 7 of the Hawai'i Constitution

Article I, Section 7 of the Hawai'i Constitution protects "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy. . . ." Haw. Const. Art. I, § 7 (1978). We have held that the stop of a vehicle for an investigatory purpose constitutes a seizure within the meaning of the constitutional protection against unreasonable searches and seizures. State v. Heapy, 113 Hawai'i 283, 290, 151 P.3d 764, 771 (2007) (cleaned up).

The "fruit of the poisonous tree" doctrine prohibits the use of evidence at trial which comes to light as a result of the exploitation of a previous illegal act of the police. State v. Trinque, 140 Hawai'i 269, 281, 400 P.3d 470, 482 (2017) (citations omitted)). Under the fruit of the poisonous tree doctrine, admissibility is determined by ascertaining whether the evidence objected to as being "fruit" was discovered or became known by the exploitation of the prior illegality or by other means sufficiently distinguished as to purge the later evidence of the initial taint. Trinque, 140 Hawai'i at 282, 400 P.3d at 483.

23

To prevent evidence from being suppressed under this doctrine, the State must show that its evidence is untainted by the government's purportedly unlawful act.  See id.  The State may do this by either showing that the police did not exploit the illegal activity to gather evidence, or by demonstrating that there is no causal link between the illegal activity and the evidence gathered.  See Trinque, 140 Hawai'i at 281, 400 P.3d at 482.

Yuen argues that the MPs' actions resulted in his continued detention until HPD officers arrived, and the MPs' statements identifying him as the driver of Unit 1 resulted in HPD officers conducting their own investigation based on a suspicion that Yuen was OVUII.

### 2.   Posse Comitatus Act

Yuen's Article I, Section 7 claim is tied to his PCA claim. The PCA is codified at 18 U.S.C. § 1385, which provides:

> **§ 1385. Use of Army, Navy, Marine Corps, Air Force, and Space Force as posse comitatus**
>
>> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both.

Per Black's Law Dictionary (11th ed. 2019), "posse comitatus" is defined as "[a] group of citizens who are called together to

help the sheriff keep the peace or conduct rescue operations. —
Often shortened to *posse*."

As can be seen, the plain language of the PCA imposes
criminal penalties on a military violator. It appears, however,
that no one has been so prosecuted and that federal courts do
not apply the exclusionary rule for PCA violations. United
States v. Eleuterio, Case No. 3:21-cr-0001, 2024 WL 1620383, *1,
at *3 (D.V.I. April 15, 2024) ("In particular, federal courts
have overwhelmingly refused to impose the extraordinary remedy
of the exclusionary rule for a violation of the PCA.").

Under Hawai'i law, however, evidence obtained in violation
of the PCA and "then proferred in criminal proceedings against
[a defendant] must be suppressed under the authority of this
court's supervisory powers in the administration of criminal
justice in the courts of our state." Pattioay, 78 Hawai'i at
469, 896 P.2d at 925. Thus, evidence not shown to have been of
such a manner consistent with a military function or purpose
under the PCA is not admissible. 78 Hawai'i at 470, 896 P.2d at
926.

Also relevant is Brune v. Administrative Director of
Courts, 110 Hawai'i 172, 130 P.3d 1037 (2006), in which a Navy
lieutenant petitioned for judicial review of the administrative

25

revocation of his driver's license, after his arrest on a Naval reservation by a Navy civilian police officer. We stated:

> In Pattioay, it was stated that "[w]here the target of a military investigation is a civilian *and there is no verified connection to military personnel,* the PCA prohibits military participation in activities designed to execute civilian laws." 78 Hawai'i at 464, 896 P.2d at 920 (emphasis added). In that case, the prosecution argued that State v. Hayes, 102 N.C.App. 777, 404 S.E.2d 12 (1991), should control. Pattioay, 78 Hawai'i at 463–64, 896 P.2d at 919–20. In Hayes, the North Carolina Court of Appeals held that the PCA was not violated when military investigators assisted local law enforcement officers in arresting an absent-without-official-leave soldier. 404 S.E.2d at 14–15. This court, in Pattioay, found Hayes to be clearly distinguishable because the defendant was a member of the military. Pattioay, 78 Hawai'i at 464, 896 P.2d at 911.
>
> Thus the restrictions of the PCA do not appear to apply in the instant case as Appellant is a member of the military and was arrested on the Pearl Harbor Naval reservation. See United States v. Thompson, 33 M.J. 218, 220–21 (C.M.A.1991) (concluding that the PCA was not violated when military agents accompanied local law enforcement agents to the off-base home of a senior airman with the U.S. Air Force to search the apartment and seize stolen property); cf. United States v. Griley, 814 F.2d 967, 976 (4th Cir.1987) (stating that "[i]t is well settled that military investigators may look into violations of civil law that occur on military bases, or within military operations" and holding that the PCA was not violated when a civilian defendant's home located on a military base was searched by a Federal Bureau of Investigation special agent and a military investigator for stolen property when it was not known whether the thief was a military employee or a civilian (internal citations omitted)). We thus agree with the reasoning of the North Carolina Court of Appeals in this respect.

Brune, 110 Hawai'i at 179, 130 P.3d at 1044 (emphases added).

Thus, it appears that while the PCA allows military personnel to investigate violations of civil law occurring on military bases, where the target of a military investigation is a civilian and there is no verified connection to military personnel or military operations or purposes, the PCA prohibits

26

and restricts military participation in activities designed to execute civilian laws.[13]

The dissent cites to a Court of Appeals of Alaska opinion that held there was no PCA violation when a military police officer arrested a civilian exhibiting symptoms of intoxication at a routine identification check at a military gate. Municipality of Anchorage v. King, 754 P.2d 283 (Alaska Ct. App. 1988). That case is distinguishable, however, as the defendant was already at the gate of a military base and had been stopped for a routine military identification check. 754 P.2d at 284. The dissent's reliance on United States v. Bennett, No. 8:11-CR-00014-T-33AEP, 2011 WL 1690122, *1 (M.D. Fla. Apr. 19, 2011), is

---

[13] Military police training information available online contains the following:

> Military law enforcement authorities have no general authority to apprehend a civilian off post, in the absence of an applicable state law. AR 190-30, paragraph 4-2a, states: "in Conus, incidents occurring off post normally are investigated by civil law enforcement agencies." As we shall see later, the military may, however, investigate a crime off post so long as there is a "direct" military interest in it (CIDR 195-1, paragraph 2-2c). In other words, the investigation must "satisfy ARMY investigative needs in a criminal matter of ARMY interest." Such actions are not in violation Posse Comitatus Act (AR 195-2, Paragraph 3-1b). The authority to investigate does not confer a general authority to apprehend civilians off-post.

See Determine Investigative Responsibility/Jurisdiction https://rdl.train.army.mil/catalog-ws/view/100.ATSC/D7D82012-83C4-4788-9279-807097158E5B-1308937282846/mp1018/lsn1.htm [https://perma.cc/GAJ8-ZNSL]

It appears the district court had concerns regarding potential violations of the PCA, as it sua sponte excluded any evidence regarding the MPs' actions or statements.

also misplaced, as it involved the detention of an intoxicated person who had also already entered the gate area of a military base.

The Ninth Circuit has held that there is no PCA violation where there is an independent military purpose.  See, e.g., United States v. Chon, 210 F.3d 990, 994 (9th Cir. 2000).[14] Here, the accident did not take place on a military base and there is no indication in the record that Yuen is a member of the military.[15]  The record does not reflect how many lanes led to the HAFB O'Malley Gate and whether the vehicles were blocking traffic or posed a risk to others.  Because no motion to suppress was filed and the MPs did not testify, no military purpose was argued and no counter-arguments to any such

---

[14]     Chon involved recovery of military equipment, and it says:

> Other courts have relied on the military purpose exception
> to sanction military assistance in law enforcement
> activities where the illegal acts were perpetrated by
> military personnel or where civilians committed illegal
> acts on military bases. See e.g. Applewhite v. United
> States Air Force, 995 F.2d 997, 1001 (10th Cir. 1993)
> (holding that the military may investigate illegal drug
> transactions by active duty military personnel); United
> States v. Banks, 539 F.2d 14, 16 (9th Cir. 1976) (allowing
> military personnel to act upon on-base violations of civil
> law committed by civilians); United States v. Thompson, 30
> M.J. 570, 574 (1990) (allowing military jurisdiction over a
> military member who stole both civilian and military
> property).

Chon, 210 F.3d at 994.

[15]     Arising out of this MVC, Yuen was also cited for Delinquent Vehicle Tax in 1DTI-18-181085.  His ticket indicates "No" for "Military Service."

28

arguments could have been made or considered.[16]  The record also does not reflect how much time lapsed between the MVC and the arrival of HPD officers.

The dissent also cites to a Department of Defense (DOD) policy, DOD Instruction no. 3025.21, to justify the MPs' actions.  Hawai'i state courts are bound by United States Supreme Court interpretations of federal law but are not bound by DOD interpretations of the PCA.  See James v. City of Boise, 577 U.S. 306, 307 (2016) (per curiam); State Bank of Cherry v. CGB Enters., 984 N.E.2d 449, 458 (Ill. 2013).  Moreover, this policy is titled "Defense Support of Civilian Law Enforcement Agencies." Section (4)(a) defining the general policy says the "DoD shall be prepared to support civilian law enforcement agencies consistent with the needs of military preparedness of the United States, while recognizing and conforming to the legal limitations on direct DoD involvement in civilian law enforcement activities."  While this policy provides that DoD "[a]ctions taken for the primary purpose of furthering a DoD . . . function of the United States, regardless of incidental benefits to civil authorities" are permissible, it also makes

---

[16]     The dissent would determine on appeal that an independent military purpose exists under the facts of this case, even though the issue was never addressed by the trial court below based on the lack of a motion to suppress. If the State argues an independent military purpose on remand, Yuen would have an opportunity to present opposing arguments.

29

clear that "[t]his does **not** include actions taken for the primary purpose of aiding civilian law enforcement officials or otherwise serving as a subterfuge to avoid the restrictions of the Posse Comitatus Act." Instruction 3025.21 (2013), https://www.hsdl.org/c/view?docid=732255 [https://perma.cc/SW8X-426U] (emphasis added).

Here, the record does not contain any general request from HPD that MPs investigate possible state traffic law violations outside military bases or any suggestion that HPD specifically requested that MPs investigate, test, and apprehend Yuen. The MPs' initial approach and investigation of the scene to see who was involved, check injuries, and ensure there was no one involved intending harm to HAFB would arguably be considered an independent military purpose, as suggested by the dissent. However, the MPs' subsequent actions of initiating a PAS and SFST, then detaining Yuen as a result, was a step too far and constituted an "intrusion into civilian matters" as proscribed by the PCA. The proper response would have been to call local authorities and let them handle it from there as there was no evidence Yuen, or anyone else involved, posed a danger to the base, was attempting to enter the base, or flee the scene after the crash. The record also does not support that there were

other exigent circumstances requiring further MP involvement before the arrival of HPD.

The dissent posits that Pattioay is factually distinguishable. Pattioay, however, clearly requires exclusion of evidence brought forth by military officers in violation of the PCA offered in a civilian criminal investigation. 78 Hawai'i at 470, 896 P.2d at 926. Even if the district court struck most of the HPD officer testimony regarding statements MPs made at the scene, the "fruit of the poisonous tree" doctrine would prohibit the use of evidence at trial which comes to light as a result of the exploitation of a previous illegal act of law enforcement.

At bottom, ineffective assistance only requires possible impairment of a potentially meritorious defense. Based on this record, trial counsel was ineffective in not filing a motion to suppress, which could have resulted in all subsequent evidence being suppressed as fruit of the poisonous tree. There was a possible impairment of a potentially meritorious defense.

**B. Where ineffective assistance is clear from the existing record, it is inappropriate to defer a ruling to a Rule 40 petition; also, appellate courts should order service of ineffective assistance claims on trial counsel where appellate counsel has failed to do so**

As noted, despite deeming the existing record insufficient to establish ineffective assistance, the ICA indicated Yuen had

a colorable claim based on trial counsel's failure to file a motion to suppress and that a factual record could be developed at a Rule 40 hearing.  Thus, the ICA affirmed Yuen's conviction without prejudice him filing a Rule 40 petition.

As explained, we disagree with the ICA that the existing record was insufficient to establish ineffective assistance. The ICA also noted, however, that it found the record insufficiently developed due to appellate counsel's initial failure to serve trial counsel with the ineffective assistance claim asserted on appeal, as required by HRAP Rule 28(a).  To provide trial counsel an opportunity to respond, along with acceptance of certiorari, we required Yuen's appellate counsel to serve trial counsel as required by HRAP Rule 28(a).  We provided trial counsel with thirty days to respond; no response was filed.

Not addressing ineffective assistance claims on the basis of lack of service on trial counsel, however, can prejudice a defendant.[17]  Further, HRPP Rule 40(a) expressly provides that it

---

[17]    It takes significant time after affirmance of a conviction on final appeal for a HRPP Rule 40 petition to be filed and resolved.  In addition, allowing a Rule 40 petition instead of addressing an issue on direct appeal can also be detrimental to a defendant because defendants are not automatically entitled to counsel when they bring Rule 40 petitions.  Only if a court finds a "colorable claim" will counsel be appointed.  In contrast, our case law recognizes a criminal defendant's right to counsel on appeal and on certiorari.  See State v. Uchima, 147 Hawaiʻi 64, 464 P.3d 852 (2020).

"shall not be construed to limit the availability of remedies . . . on direct appeal."

Based on our supervisory powers under HRS § 602-4 (2016),[18] we therefore hold that if new appellate counsel on direct appeal fails to serve an ineffective assistance claim on trial counsel, the appellate court must order counsel to do so and provide trial counsel with a reasonable opportunity to respond. The appellate court is to address the ineffective assistance claim based on the record after that opportunity has been provided instead of denying an ineffective assistance claim without prejudice to a HRPP Rule 40 petition.[19]

## C.    Substantial evidence

Finally, we must also address the second issue on certiorari alleging insufficient evidence. See Davis, 133 Hawai'i at 118, 324 P.3d at 928. "On appeal, the test for a claim of insufficient evidence is whether, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact." State v. Matias, 74 Haw. 197, 207, 840 P.3d 374, 379 (1992) (cleaned

---

[18]    **§ 602-4 Superintendence of inferior courts.** The supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law.

[19]    The Standing Committee to Review the Hawai'i Rules of Appellate Procedure may wish to consider an appropriate amendment to HRAP Rule 28(a).

up). "It matters not if a conviction under the evidence as so considered might be deemed to be against the weight of the evidence so long as there is substantial evidence tending to support the requisite findings for the conviction." Id. (cleaned up). "Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to reach a conclusion." Id. (cleaned up).

We agree with the ICA's analysis of this issue. The ICA did not err in concluding that the testimony of Officers Peter and Laganse constituted sufficient circumstantial evidence to support a finding that Yuen operated Unit 1.

### V.     Conclusion

For the foregoing reasons, we vacate the ICA's October 18, 2023 judgment on appeal, only as to its affirmance of Yuen's OVUII conviction and sentence, as well as the Honolulu Division of the District Court of the First Circuit's December 11, 2019 Notice of Entry of Judgment and/or Order and Plea/Judgment, only as to Yuen's OVUII conviction and sentence. Judgment is to enter accordingly.

Alen M.K. Kaneshiro                    /s/ Sabrina S. McKenna
for petitioner
                                       /s/ Todd W. Eddins
Brian R. Vincent
for respondent                         /s/ Vladimir P. Devens

